**In re DG ACQUISITION CORP., et al.**

No. 97 Civ. 4638 (SAS).

United States District Court,
S.D. New York.

Oct. 27, 1997.

Gregory V. Varallo, Russel C. Silberglied, Richards, Layton & Finger, Wilmington, DE, Tracy L. Klestadt, Tracy L. Klestadt & Associates, New York City, for Trustee.

Gerald B. Lefcourt, Sheryl E. Reich, Gerald B. Lefcourt, P.C., New York City, for Ivette Dabah.

Richard Ware Levitt, New York City, for Barbara Dabah.

Joshua J. Angel, Leonard H. Gerson, Angel & Frankel, New York City, for Yvette Dabah.

Steven Kimmelman, James Burke, Pollack & Greene, New York City, for Renee Dabah.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

DG Creditor Corp. ("the Trustee") appeals pursuant to 28 U.S.C. § 158 from a decision of the United States Bankruptcy Court for the Southern District of New York denying its motion to hold debtors' non-debtor spouses in contempt for failure to produce documents relating to certain of the debtors' alleged unscheduled assets. For the reasons that follow, the decision of the Bankruptcy Court is affirmed.

## I. Legal Standard

In bankruptcy cases, a District Court sits as an appellate court and applies a dual standard of review to the Bankruptcy Court's findings. The Bankruptcy Court's findings of fact may not be set aside unless they are clearly erroneous. Fed. R. Bankr.P. 8013. *See In re Artha Management, Inc.*, 91 F.3d 326, 328 (2d Cir.1996). Questions of law,

however, are subject to de novo review. *See In re Maxwell Newspapers, Inc.*, 981 F.2d 85, 89 (2d Cir.1992) citing *Truck Drivers Local 807 v. Carey Transp., Inc.*, 816 F.2d 82, 88 (2d Cir.1987).

## II. Factual Background

The facts as found by the Bankruptcy Court are not disputed on this appeal. To summarize: Morris Dabah, Haim Dabah, Ezra Dabah, Isaac Dabah and DG Acquisition Corp. ("the Debtors") filed a petition for reorganization under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Delaware court") on November 25, 1992. The Delaware court confirmed a plan of reorganization on October 26, 1993. Because it had allegedly discovered unscheduled assets held by the Debtors in 1994, the Trustee sought authorization from the Delaware court to depose the Debtors and their wives Barbara, Ivette, Renee and Yvette Dabah (the "Dabah wives" or the "wives") and to require them to produce certain documents. Pursuant to this motion, the Delaware court ordered the requested documents to be produced on May 25, 1995 and the Dabah wives to be deposed on June 20 or 21, 1995. *See In re DG Acquisition Corp.*, 208 B.R. 323, 325 (Bankr.S.D.N.Y.1997) (summary of facts as reported in Bankruptcy Court opinion).

The Trustee issued three subpoenas under the aegis of the court order in April, November and December, 1995. In response to the first two, the Dabah wives objected by letter—not raising the Fifth Amendment but expressly reserving other defenses—and failed to appear for their scheduled depositions. In response to the third, they moved before the Bankruptcy Court to quash the subpoenas, primarily on the grounds that the information sought was privileged by virtue of spousal immunity. The Trustee cross-moved to compel production of the documents. *See id.* at 325–26.

On February 21, 1996, the Bankruptcy Court denied the motion to quash and granted the motion to compel. The documents were ordered produced by March 15, 1996. *See id.* at 326. The Dabah wives appealed,

but their appeal was dismissed on the grounds that discovery orders are not appealable. *In re DG Acquisition Corp.*, 96 Civ. 3496 (S.D.N.Y. Sept. 4, 1996).

Shortly thereafter, the Trustee gave notice that the Dabah wives would be deposed and required to produce documents in late October, 1996. After a thirty-day extension agreed to by the parties, the date for document production was set at December 4, 1996 and the depositions for December 11–13, 1996. *See In re DG*, 208 B.R. at 326.

The Dabah wives refused to produce any documents on December 4, raising their Fifth Amendment privilege. Two days later, the Trustee moved to hold them in contempt. The Bankruptcy Court ordered the wives to respond by December 11 or produce the subpoenaed documents for an *in camera* inspection. On December 11, each of the wives was separately deposed, and each asserted her Fifth Amendment privilege against self-incrimination in response to almost every question asked. Shortly thereafter, the wives submitted the requested documents to the Bankruptcy court. *See id.* at 326–27.

On April 21, 1997, the Bankruptcy Court issued an order denying the Trustee's motion for contempt. In so doing, it rejected the Trustee's argument that the wives had waived their Fifth Amendment rights and/or that the denial of the motion to quash barred further litigation of the Fifth Amendment issue. *See id.* at 326–29. This appeal followed.

## III. Discussion

### A. Appellate Jurisdiction

■ A preliminary issue is whether this court has jurisdiction to hear an appeal from a discovery order of a bankruptcy court. Under 28 U.S.C. § 158(a), district courts "have jurisdiction to hear appeals from final judgments, orders and decrees...." Ordinarily, discovery orders are not immediately appealable because they are not "final ... orders." *See United States v. Pappas*, 94 F.3d 795, 798 (2d Cir.1996). However, there is a judicially-created exception to this rule: Orders denying discovery of non-parties in suits pending in other jurisdictions are treated as final for the purposes of appellate jurisdiction. *See Republic Gear Co. v. Borg–Warner Corp.*, 381 F.2d 551 (2d Cir.1967); *see also Corporation of Lloyd's v. Lloyd's U.S.*, 831 F.2d 33, 34 (2d Cir.1987). The order of the Bankruptcy court fits this description precisely; therefore, it is immediately appealable.

### B. Res Judicata

■ The Trustee argues that because the Dabah wives failed: to assert their Fifth Amendment privilege when they moved to quash the subpoenas, res judicata bars them from doing so as a defense to its contempt motion. *See* DG Creditor Corp.'s Opening Brief on Appeal at 24. Under the doctrine of res judicata, "a final judgment on the merits in an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Computer Assocs. Int'l v. Altai, Inc.*, 126 F.3d 365, 369 (2d Cir.1997) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981)) (internal quotes omitted). The policies underlying res judicata are clear: The rule serves "the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979).

The Fifth Amendment of the United States Constitution provides that "no person ... shall be compelled in any criminal case to be witness against himself...." U.S. Const. amend. V. This right has long been understood to be fundamental to the preservation of individual rights in a democratic society. As the Supreme Court has observed:

> The privilege against self-incrimination registers an important advance in the development of our liberty—one of the great landmarks in man's struggle to make himself civilized. It reflects many of our fundamental values and most noble aspirations: our unwillingness to subject those suspected of crime to the cruel trilemma of self-accusation, perjury or contempt; our preference for an accusatorial rather than

an inquisitorial system of criminal justice; our fear that self-incriminating statements will be elicited by inhumane treatment and abuses; our sense of fair play which dictates a fair state-individual balance by requiring the government to leave the individual alone until good cause is shown for disturbing him and by requiring the government in its contest with the individual to shoulder the entire load; our respect for the inviolability of the human personality and of the right of each individual to a private enclave where he may live a private life; our distrust of self–deprecatory statement; and our realization that the privilege, while sometimes a shelter to the guilty, is often a protection to the innocent. *Murphy v. Waterfront Comm'n of New York Harbor,* 378 U.S. 52, 55–56, 84 S.Ct. 1594, 1597, 12 L.Ed.2d 678 (1964) (internal quotes and citations omitted).

 While the policies furthered by res judicata are unquestionably important, they are not, on balance, as significant as these profound constitutional concerns. The full weight of the res judicata rule, therefore, may not be applicable when it threatens to diminish the policies underlying the Fifth Amendment. It is certainly true that the assertion of Fifth Amendment rights can be barred by a prior judgment, at least when the issue has been fully litigated. *See United States v. Secor,* 476 F.2d 766, 770 (2d Cir.1973). However, it is also true that courts show an unmistakable disinclination to preclude assertion of such rights when the issue has never actually been raised.

For example, in *United States v. Edgerton,* 734 F.2d 913 (2d Cir.1984), the court reversed a contempt order issued against an "obstreperous" taxpayer who had continuously refused to respond to court orders to produce documents. The struggle began when the IRS issued a summons that ordered Edgerton to produce certain financial records. When he ignored this summons, the IRE petitioned the district court for an order of enforcement. At the enforcement hearing, Edgerton cited his privilege against self incrimination as the justification for his non-compliance. The court rejected this argument (insofar as it related to documents created by third parties) and ordered him to produce all non-privileged documents. *See id.* at 915–16.

Edgerton defied the order, persisting in his refusal to produce any documents. The IRS then petitioned the district court for an order holding him in contempt. At the contempt hearing, the court, on behalf of the IRS, asked Edgerton whether the documents identified in the summons existed. When he refused to answer the question, again citing his Fifth Amendment rights, the court held him in contempt. *See id.* at 916–17.

On appeal, the Government urged the court to affirm on the ground that res judicata barred Edgerton from raising his Fifth amendment privilege at the contempt hearing, as he had done so and lost at the enforcement hearing. Sensitive to the importance of the constitutional principle at stake, however, the court of appeals applied res judicata in an extremely conservative fashion: It concluded that Edgerton could not be held in contempt for refusing to answer the district court's question as to the whereabouts of the requested documents, as this question had never been *precisely* addressed at the enforcement hearing. At that time, the district court had held only that Edgerton could not resist *production* of the documents. The court of appeals recognized that the distinction between being ordered to produce documents and being ordered to answer questions about the existence of documents was a fine one, as a finding that the documents existed could be said to be implicit in the district court's order that they be produced. Nevertheless, it concluded, the enforcement order was res judicata at the contempt hearing only to the extent that Edgerton was foreclosed from raising a defense of non-existence at the contempt hearing. *See id.* at 920 n. 8.

 The case at bar, of course, is distinguishable from *Edgerton* in that here the Trustee's contempt motion and the Dabah wives' motion to quash address the same issue: whether or not the Dabah wives must produce documents pursuant to the Trustee's subpoena. However, as I have described, *Edgerton* also lends support to the broader proposition that res judicata should be ap-

plied narrowly when Fifth Amendment rights are at stake. Nor is *Edgerton* alone in so holding *See, e.g., United States v. Drollinger,* 80 F.3d 389, 392 (9th Cir.1996) ("Failure to appeal a final order enforcing [a] ... summons does not necessarily bar rasing the Fifth Amendment privilege in contempt proceedings."); *In re Kave,* 760 F.2d 343, 353 n. 22 (1st Cir.1985) (res judicata did not bar assertion of Fifth Amendment rights at contempt hearing, despite the fact that a motion to quash the subpoena had already teen made on other grounds and denied)

Under the circumstances of this case, the doctrine of res judicata does not preclude the Dabah wives from now asserting their Fifth Amendment rights. Most importantly, the Fifth Amendment issue was never litigated at the motion to quash stage. If res judicata were now applied, a fundamental constitutional right of the Dabah wives would be denied without any decision against them on the merits of the question.

Furthermore, there is no proof in this record that the Dabah wives' assertion of the privilege was delayed for opportunistic reasons. It may well be that until the documents were gathered by the Dabah wives and reviewed by their counsel in response to the February 21, 1996 order, which became final on September 4, 1996, counsel did rot have a firm basis to assert a Fifth Amendment privilege. The Trustee, understandably, believes otherwise, and is certainly correct in arguing that the Dabah wives have not been models of diligence where assertion of their Fifth Amendment rights is concerned. Unlike the parties in many of the cases cited by the Trustee, however, the Dabah wives have not ignored any subpoenas or court orders. While their conduct may have come uncomfortably close to the edge of acceptable practice, they have at least not acted in obvious bad faith. *Cf. United States v. Kirksey,* 631 F.Supp. 165, 166–67 (S.D.N.Y.1986) (taxpayer's Fifth Amendment privilege waived when he ignored IRS summons and repeatedly changed his story as to how long it would take to produce requested documents); *United States v. Fein,* No. M–18–304, 1985 WL 254 at *1 (S.D.N.Y. Feb. 6, 1985) (taxpayer's Fifth Amendment rights waived when he repeatedly ignored IRS summons). I am certainly cognizant of the risk that parties will withhold their Fifth Amendment claims until the last minute solely to frustrate discovery. However, in these circumstances, I find that danger to be outweighed by the risk that application of res judicata will leave the Dabah wives without the protection the Fifth Amendment was meant to provide.

## C. Waiver

■ The Trustee also argues that the Dabah wives waived their Fifth Amendment rights by not asserting them earlier. The privilege against self-incrimination can be waived, but in light of the its constitutional importance, courts are to "indulge every reasonable presumption against finding a testimonial waiver." *Klein v. Harris,* 667 F.2d 274, 287 (2d Cir.1981) (citing *Emspak v. United States,* 349 U.S. 190, 198, 75 S.Ct. 687, 692, 99 L.Ed. 997 (1955)). This presumption is especially heavy when the purported waiver has occurred through non-assertion. *See United States v. A & P Arora, Ltd.,* No. 93–3390, 1995 WL 18276, at *1 (10th Cir. Jan. 18, 1995) (courts are reluctant to equate non-assertion and waiver because "the privilege has a unique, constitutional grounding which counsels caution in the application of technical waiver principles") (citations omitted), *but see Maness v. Meyers,* 419 U.S. 449, 466, 95 S.Ct. 584, 595, 42 L.Ed.2d 574 (1975) (stating in dicta that the privilege can be waived through non-assertion).

■ In part, this is because silence is necessarily ambiguous, and equivocal waivers of Fifth Amendment rights are ineffective. *See Emspak,* 349 U.S. at 195–97, 75 S.Ct. at 690–92. Another concern is that it is not always obvious when a person's Fifth Amendment rights become ripe for assertion. It is well established, for example, that a person's fear of incrimination must become "substantial and real" before the privilege can be raised. *United States v. DeSalvo,* 26 F.3d 1216, 1221 (2d Cir.1994) (internal quotes omitted) (quoting *Marchetti v. United States,* 390 U.S. 39, 53, 88 S.Ct. 697, 705, 19 L.Ed.2d 889 (1968)). It is similarly clear that assertion of the privilege is premature until specific questions

calling for self-incriminatory answers are asked. *See Hudson Tire Mart, Inc. v. Aetna Casualty and Surety Co.,* 518 F.2d 671, 674 (2d Cir.1975). If courts are too quick to find waiver from the nonassertion of Fifth Amendment rights, the space between "too early" and "too late" will become intolerably small. *See Drollinger,* 80 F.3d at 392–93 (Fifth Amendment privilege not waived, despite previous non-assertion, when it would have been premature to assert it at prior hearing.) Perhaps for this reason, most cases finding waiver via non-assertion involved people who had missed clear deadlines by which objections to discovery requests were due. *See, e.g., United States v. Hatchett,* 862 F.2d 1249, 1250 (6th Cir.1988) (appellant's Fifth Amendment privilege waived when he failed to assert it in response to interrogatories within time limits fixed by Federal Rules of Civil Procedure); *Davis v. Fendler,* 650 F.2d 1154, 1160 (9th Cir.1981) (same); *United States v. Charles George Trucking Co.,* 642 F.Supp. 329, 334 (D.Mass. 1986) (privilege waived when defendants failed to assert it within thirty day period provided by government agency).

■ The Trustee does not identify any date by which the Dabah wives were bound, on penalty of waiver, to raise their privilege against self-incrimination. Instead, it confines itself Largely to arguing that, because the requested discovery consisted of documents rather than testimony, they could have asserted it before December 4, 1996. *See* DG Creditor Corp.'s Opening Brief on Appeal at 16–20. The issue, however, is not whether the privilege *could* have been raised, but instead whether it *must* have been raised: Even if the Trustee's assertions are correct, they do not explain why the heavy presumption against waiver is lifted. While a finding of waiver would not render the Dabah wives' privilege a complete nullity, neither would it give adequate scope to "one of the great landmarks in man's struggle to make himself civilized." *Murphy,* 378 U.S. at 55, 84 S.Ct. at 1596. Absent an unmistakable deadline for assertion of objections or a clear showing of bad faith, I cannot find that the Dabah wives have waived their Fifth Amendment privilege against self–incrimination.

## IV. Conclusion

For the foregoing reasons, the Dabah wives are not barred by the doctrines either of res judicata or waiver from now asserting their Fifth Amendment rights. The decision of the Bankruptcy Court is therefore affirmed.

SO ORDERED.