**In re DG ACQUISITION CORP. Debtor.**

**DG CREDITOR CORP., trustee for the DG Creditor Trust, Appellant,**

v.

**Ivette DABAH, Barbara Dabah, Renee Dabah, and Yvette Dabah, Appellees.**

**Docket 97–5087.**

United States Court of Appeals, Second Circuit.

Argued May 5, 1998.

Decided July 31, 1998.

Tracy L. Klestadt, New York City (Tracy L. Klestadt & Associates; Gregory V. Varallo, Russell C. Silverglied, Richards, Layton & Finger, Wilmington, DE, of Counsel), for Appellant.

Gerald B. Lefcourt, New York City (Sheryl E. Reich, Mark Gimpel, for Appellees Ivette Dabah and Yvette Dabah; Richard Ware Levitt, New York City, for Appellee Barbara Dabah; Steven Kimmelman, Carol Sigmond, Pollack & Greene, New York City, of Counsel, for Appellee Renee Dabah).

Before: FEINBERG, PARKER and PHILLIPS\*, Circuit Judges.

FEINBERG, Circuit Judge:

This appeal arises from a Chapter 11 reorganization petition filed by Morris Dabah, Haim Dabah, Ezra Dabah, Isaac Dabah and DG Acquisition Corp. (the "Debtors") in the United States Bankruptcy Court for the District of Delaware. DG Creditor Corp. (the "Trustee"), trustee for the DG Creditor Trust (the "Trust"), appeals from an order of the United States District Court for the Southern District of New York, Shira A. Scheindlin, J. The order affirmed a decision of the United States Bankruptcy Court for the Southern District of New York, Jeffrey H. Gallet, J., denying the Trustee's motion to compel the Debtors' non-debtor spouses, Barbara Dabah, Ivette Dabah, Renee Dabah and Yvette Dabah (the "Dabah Wives") to produce documents pursuant to subpoenas obtained by the Trustee from the New York bankruptcy court.

The (New York) bankruptcy court found that production of the documents would violate the Dabah Wives' Fifth Amendment "act of production" privilege against self-incrimination and rejected the Trustee's arguments that the Dabah Wives: (1) had waived the privilege by failing to assert it until shortly before production was due; and (2) were barred from asserting the privilege by the doctrine of res judicata because they had failed to raise it in an earlier attempt to quash the subpoenas. The district court agreed with the bankruptcy court. We affirm.

## I. Background

### A. Facts

In November 1992, the Debtors filed their petition for reorganization under Chapter 11 of the bankruptcy laws. In October 1993, the Delaware bankruptcy court confirmed a

---

\* Honorable J. Dickson Phillips, Jr., United States Circuit Senior Judge for the Fourth Circuit, sitting by designation.

Third Amended Joint Plan of Reorganization (the "Plan"). Under § 7.6(a) of the Plan, any assets not disclosed by the Debtors ("Unscheduled Assets") that are discovered within five years of confirmation of the Plan (i.e., until October 1998) are to be contributed to the Trust. This provision was later extended by the Delaware bankruptcy court so that it applies through the year 2001.

In pursuit of such Unscheduled Assets (assets worth several million dollars have already been found), the Trustee filed a motion with the Delaware bankruptcy court pursuant to Bankruptcy Rule 2004 seeking to subpoena documents and testimony from the Dabah Wives. In April 1995, a first set of subpoenas was issued by the New York bankruptcy court for service upon the Dabah Wives in New York, calling for depositions in June 1995 and document production shortly before then.

The Dabah Wives objected to the subpoenas on grounds of improper service, lack of authority to issue the subpoenas and spousal privilege. The letters conveying these objections made specific reference to Fed.R.Civ.P. 45 [1] and did not mention the Fifth Amendment, but said that "[t]he foregoing is without waiver of any other defenses or objections to the Subpoena."

New subpoenas were issued in November and December 1995, and the Dabah Wives responded with a letter referring to and reasserting their prior objections. The letter concluded with the same sentence purporting not to waive other defenses. In January 1996, the Dabah Wives moved to quash the subpoenas and the Trustee cross-moved to compel compliance. In its brief in support of its motion the Trustee argued that spousal privilege could be asserted only in response to specific questions and not as a general bar to discovery. The Trustee also noted that the Dabah Wives had not raised (and argued that they could not raise) a Fifth Amendment privilege claim.

In February 1996, the bankruptcy court denied the Dabah Wives' motion to quash and granted the Trustee's motion to compel. It did not address the merits of the spousal

privilege, accepting the Trustee's argument that the privilege could only be asserted in response to specific questions.

The Dabah Wives appealed this decision to the district court. The Trustee moved to dismiss the appeal on the grounds that discovery orders are not appealable final orders. The district court, Sidney H. Stein, J., agreed but treated the Dabah Wives' notice of appeal as a motion for leave to appeal an interlocutory order pursuant to 28 U.S.C. § 158. In September 1996, however, the district court denied that motion and granted the Trustee's motion to dismiss.

Back in the bankruptcy court, the Dabah Wives' depositions and document production were set for October 1996, later delayed at the request of the Dabah Wives' counsel to December 1996. However, in November 1996 new counsel for Ivette Dabah indicated to the Trustee's counsel that his client would almost certainly assert the Fifth Amendment privilege in response to all document requests or deposition questions, and that the other Dabah Wives would likely do the same. Letters dated December 4, 1996 from the attorneys for each of the Dabah Wives confirmed this. After the Trustee moved for an order holding the Dabah Wives in contempt, the bankruptcy court ordered the Dabah Wives to attend depositions pertaining to the documents on December 11, 1996. At the depositions, each asserted the Fifth Amendment privilege in response to almost every question. On December 11 and 12, the bankruptcy judge reviewed the subpoenaed documents in camera, and listened to oral argument on issues of timeliness and waiver.

B. The Decisions Below

On April 21, 1997 the bankruptcy court sustained the assertion of the Fifth Amendment privilege. The court noted that "waiver of such a fundamental constitutional guarantee is not to be lightly inferred" and that "courts are to indulge every reasonable presumption" against waiver. *In re DG Acquisition Corp.*, 208 B.R. 323, 327 (Bankr.

---

1. The Federal Rules of Civil Procedure will hereafter be referred to as "Rule ___." Other rules, such as bankruptcy and local rules, will be specified as such.

S.D.N.Y.1997) (internal quotation marks and citations omitted).

The bankruptcy court rejected the Trustee's argument that Rule 45(c)(2)(B) [2] requires all objections to be made within 14 days after service of the subpoena, observing that "nothing in the language of [the rule] indicates that once a party objects to a subpoena, she is limited to only those defenses raised at that time." *Id.* at 328. The court rejected the Trustee's argument that failure to raise the Fifth Amendment in the motion to quash barred raising it in defense of a contempt motion under the doctrine of res judicata. *Id.* (citing *In re Kave*, 760 F.2d 343, 353 n. 22 (1st Cir.1985)). The court found that the Dabah Wives had no obligation to assert the Fifth Amendment privilege until their first opportunity to answer specific questions, when they did assert it. *Id.* at 329.

The Trustee appealed to the district court, pursuant to 28 U.S.C. § 158. *In re DG Acquisition Corp.*, 213 B.R. 883 (S.D.N.Y. 1997). The district court had jurisdiction over this appeal (as opposed to the Dabah Wives' prior appeal) because of a judicially-created exception to the rule that discovery orders are non-final. See *Corporation of Lloyd's v. Lloyd's U.S.*, 831 F.2d 33, 34 (2d Cir.1987) ("orders denying discovery of non-parties in suits pending in other jurisdictions are immediately appealable."). Giving reasons that for the most part were the same as those relied on by the bankruptcy court, the district court affirmed the bankruptcy court's determination that the Fifth Amendment had been properly raised.

## II. Discussion

### A. Standard of Review

▮ In an appeal from a district court's review of a bankruptcy court decision, we review the bankruptcy court independently, accepting its factual findings unless clearly erroneous but reviewing its conclusions of law de novo. *In re McLean Industries, Inc.*, 30 F.3d 385, 387 (2d Cir.1994). Also, "[a]

trial court enjoys wide discretion in its handling of pre-trial discovery, and its rulings with regard to discovery are reversed only upon a clear showing of an abuse of discretion." *Cruden v. Bank of New York*, 957 F.2d 961, 972 (2d Cir.1992) (finding trial court's ruling that attorney-client privilege was not waived not an abuse of discretion). See also, *United States v. Intern. Broth. of Teamsters*, 119 F.3d 210, 214 (2d Cir.1997) ("This Court reviews rulings on claims of attorney-client privilege for abuse of discretion"); *United States v. Jacobs*, 117 F.3d 82, 89 (2d Cir.1997) ("[T]he issue of waiver is in the first instance for the district court's discretion. . . .").

### B. Analysis

▮ The Fifth Amendment protects a person from being "compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Although the amendment refers to criminal cases, "[i]t can be asserted in any proceeding, civil or criminal, . . . against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States*, 406 U.S. 441, 444–45, 92 S.Ct. 1653, 32 L.Ed.2d 212 (footnotes omitted) (1972). Because the Fifth Amendment "protects a person only against being incriminated by his own compelled *testimonial* communications," *Fisher v. United States*, 425 U.S. 391, 409, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) (emphasis added), it does not obviously apply to production of documents. However, "[a]lthough the contents of a document may not be privileged, the act of producing the document may be." *United States v. Doe*, 465 U.S. 605, 612, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984). Document production pursuant to a subpoena "tacitly concedes the existence of the papers demanded and their possession or control" by the person producing the documents, and thus "has communicative aspects of its own." *Fisher*, 425 U.S. at 410, 96 S.Ct. 1569. The

---

**2.** Rule 45(c)(2)(B) provides in pertinent part that: Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises.

bankruptcy court considered at length whether this "act of production" privilege applied to the documents subpoenaed from the Dabah Wives. The court determined that it did apply, and the Trustee has not disputed that ruling.

■■ The Fifth Amendment privilege is not self-executing; if not invoked it may be deemed to have been waived, *Maness v. Meyers*, 419 U.S. 449, 466, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975), including by litigation conduct short of a "knowing and intelligent waiver." *Garner v. United States*, 424 U.S. 648, 654 n. 9, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976). However, waiver of such a fundamental right "is not lightly to be inferred." *Emspak v. United States*, 349 U.S. 190, 196, 75 S.Ct. 687, 99 L.Ed. 997 (1955). Indeed, "courts 'must indulge every reasonable presumption against waiver.'" *United States v. O'Henry's Film Works, Inc.*, 598 F.2d 313, 318–19 (2d Cir.1979) (quoting *Emspak*, 349 U.S. at 198, 75 S.Ct. 687).

The Trustee offers two theories as to why we should reverse the bankruptcy court's holding, affirmed by the district court, that the Fifth Amendment privilege against self-incrimination was not waived. First, the Trustee argues that the Dabah Wives' failure to raise the privilege earlier barred them as a matter of law from asserting it later, either as a waiver or under principles of res judicata. Second, it argues that if the bankruptcy court had discretion it was an abuse of that discretion not to find waiver in these circumstances. The Dabah Wives advance two principal arguments for affirmance: (1) that there was no obligation to raise the privilege prior to when they did; and (2) even if there were, the bankruptcy court properly exercised its discretion to permit the assertion.

1. Waiver as a Matter of Law / Existence of Discretion

The Trustee argues that Rule 45(c)(2)(B) requires privilege assertions to be made within 14 days of service of a subpoena. See note 2, supra and accompanying text. It argues that the penalty for untimely assertion is waiver of the privilege as a matter of law, and thus the bankruptcy court did not have discretion to find otherwise. The Trustee concedes in its brief that the text of Rule 45 "does not *expressly* describe the penalty for noncompliance with the Rule," (emphasis in original) but contends that Local Rule 14(e)(1) of the Bankruptcy Court of the Southern District of New York[3] specifies that "[a]ny ground not stated in an objection within the time provided ... shall be waived." The Trustee also complains that the bankruptcy court confused assertion of the Fifth Amendment privilege with respect to oral testimony and with respect to documents in holding that the Dabah Wives could wait to assert the privilege until their depositions. The Trustee argues that since objections to document production are due within 14 days regardless of whether there will be a deposition, the act of production privilege can and must be raised at that time. (The Trustee's res judicata argument is addressed separately below in Part II.B.2 of this opinion).

The Dabah Wives, by contrast, argue that the 14–day time period of Rule 45 does not apply to privilege objections. Rule 45(d)(2)[4] deals specifically with claims of privilege but does not contain a time limit, and Rule 45(c)(2)(B) is made "[s]ubject to paragraph (d)(2)." See note 2, supra. Thus, the Dabah Wives argue, claims of privilege are subject to the specificity requirement of (d)(2), but not to the time limit of (c)(2)(B). See e.g., *Keywell Corp. v. Piper & Marbury, L.L.P.*, 1997 WL 627636, *8 (W.D.N.Y.1997) (reaching this conclusion); *Ventre v. Datronic Rental Corp.*, 1995 WL 42345, *4 (N.D.Ill. 1995) (same).

The Dabah Wives further argue that the bankruptcy court correctly held that the

---

**3.** Local Rule 14(e)(1) states that

[w]here an objection is made to any interrogatory or sub-part thereof or to any document request under Bankruptcy Rule 7034, the objection shall state with specificity all grounds. Any ground not stated in an objection within the time provided by the Bankruptcy Rules, or any extensions thereof, shall be waived.

**4.** Rule 45(d)(2) specifies that

[w]hen information subject to a subpoena is withheld on a claim that it is privileged ... the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

Fifth Amendment privilege can only be raised in response to specific questions, even with respect to document production. See *United States v. Argomaniz*, 925 F.2d 1349, 1356 (11th Cir.1991) ("blanket refusal to produce records or to testify will not support a fifth amendment claim"); *United States v. Allee*, 888 F.2d 208, 212 (1st Cir.1989) ("The recipient of a summons properly must appear ... and claim the privilege on a question-by-question and document-by-document basis") (citations omitted). They note that their attorney notified the Trustee in writing of the Fifth Amendment privilege objection by December 4, 1996 (the date documents were requested for the December 11 deposition), and three weeks earlier by telephone.

The Dabah Wives thus contend that their Fifth Amendment privilege objection was timely made. They also argue that, in the event their assertion of the privilege is deemed untimely, the bankruptcy court possessed, and properly exercised, discretion not to find waiver.

■ We think the Trustee has the stronger argument with regard to when the Dabah Wives should have raised their privilege objection. We believe that Rule 45(c)(2)(B) does require the recipient of a subpoena to raise all objections at once, rather than in staggered batches, so that discovery does not become a "game." See *United States v. Bryan*, 339 U.S. 323, 331, 70 S.Ct. 724, 94 L.Ed. 884 (1950). We likewise disagree with the Dabah Wives' contention regarding Rule 45(d)(2), and believe that (d)(2) contains additional requirements for a claim of privilege, not alternative ones. See *Tuite v. Henry*, 98 F.3d 1411, 1416 (D.C.Cir.1996). While we are mindful that "the investment of time necessary to review all responsive documents for privileged material ... does not lend itself to the limited fourteen (14) day time period ...," *Ventre*, 1995 WL 42345 at *4, a person responding to a subpoena should at least assert any privileges within the 14 days provided in Rule 45(c)(2)(B). A full privilege log may follow "within a reasonable time," *Tuite*, 98 F.3d at 1416 (emphasis omitted), or if more time is needed an extension may be sought from the trial court.

■ On the issue of responsiveness to specific questions, whatever the rule may be for assertion of the privilege with respect to testimony, an issue not raised on this appeal, we think it is clear that Rule 45 contemplates assertion of all objections to document production within 14 days, including those based on the act of production privilege. See *id.*

■ Thus, assuming the Dabah Wives had a reasonable basis for asserting the Fifth Amendment privilege at the time they first received the subpoenas, they should have raised the privilege at that time. However, we agree with the bankruptcy court that it was not required to conclude as a matter of law that the privilege had been waived because of the untimely assertion. As the bankruptcy court noted, there is "no reason to assume that Congress intended" Rule 45 to be an absolute "time-bar for the assertion of Fifth Amendment rights." See 208 B.R. at 328. Indeed, some courts suggest that untimeliness, without more, can never justify a finding of waiver of the Fifth Amendment privilege because that privilege is "qualitatively distinct from other discovery objections." *United States v. A & P Arora, Ltd.*, 46 F.3d 1152, 1995 WL 18276, *1 (10th Cir. 1995) (unpublished) (stating that "[t]here is no clear line of authority on this point," and citing cases on both sides but not resolving the question).

■ Considering the wide discretion we allow trial courts in ruling on even mundane discovery matters, *Cruden*, 957 F.2d at 972, we think it clear that where a constitutional privilege is involved a trial court possesses the discretion not to find waiver. This is particularly true, as the district court noted, when the alleged waiver is accomplished by inaction rather than action. See 213 B.R. at 887 (the "presumption [against waiver] is especially heavy when the purported waiver has occurred through non assertion"). "[S]ilence is necessarily ambiguous, and equivocal waivers of Fifth Amendment rights are ineffective." *Id.* (citing *Emspak*, 349 U.S. at 195–97, 75 S.Ct. 687). Because, as observed by the district court and evidenced by the arguments just discussed, there was no "*unmistakable* deadline [in Rule 45] for assertion of objections," 213 B.R. at 888 (emphasis

added), the bankruptcy court possessed the discretion to look at all the circumstances and determine the appropriate penalty, if any, for the Dabah Wives' untimeliness. See *United States v. 4003–4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d 78, 85 n. 7 (2d Cir.1995) (upholding rulings with respect to Fifth Amendment privilege by referring to "trial court's ... broad discretion to control and to fashion remedies for abuses of the discovery process."); *Daval Steel Products v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir.1991) ("A district court has wide discretion in imposing sanctions...."); *Sieck v. Russo*, 869 F.2d 131, 134 (2d Cir.1989) (we "leav[e] it to the district court to determine which sanction from among the available range is appropriate."). The bankruptcy court had discretion to decide, as it did, that waiver was not called for in this case. 208 B.R. at 329.

As for Local Rule 14(e)(1), repeatedly stressed by the Trustee, we note that the text of the local rule refers to Rule 34, not Rule 45 (Bankruptcy Rule 7034 adopts Rule 34 in adversary proceedings). See note 3, supra. While Rules 34 and 45 are analytically similar, see Moore's Federal Practice, Third Edition, § 34.02[5][a], there is enough of a difference to make us hesitate to apply the local rule to this case, especially since the impact of its application might be to find waiver of the Fifth Amendment privilege. In any event, the Trustee raises Local Rule 14(e)(1) for the first time on appeal to this court. Fairness militates against finding waiver based on the rigid application of a procedural rule that was not pressed by the Trustee until this appeal and would have, in any event, only questionable controlling impact. See *North American Leisure Corp. v. A & B Duplicators Ltd.*, 468 F.2d 695 (2d Cir.1972) (decision whether to consider new arguments on appeal should be made "with due regard to ... fairness to the parties"). We therefore need not decide whether the bankruptcy court would have been required to strictly apply the local rule in this context if it had been brought to the court's attention.

## 2. Abuse of Discretion

Having held that the Dabah Wives did not waive the Fifth Amendment privilege as a matter of law and that the bankruptcy court possessed the discretion to permit a technically untimely assertion, it remains for us to decide whether its ruling was an abuse of discretion.

■ However, there is a preliminary question that should be considered first. Since the bankruptcy court erred in holding that the Dabah Wives had timely raised the Fifth Amendment privilege, it is arguable that we should simply remand to the bankruptcy court for it to consider the issue of waiver again in light of this opinion. We see no persuasive reason to follow that course. First, the court *did* recognize that the claim of privilege should have been made sooner when it stated that "it would have been preferable" for the Dabah Wives to have done so. 208 B.R. at 329. Second, the court relied heavily on the policy of the Fifth Amendment, pointing out that "the proscription against self-incrimination is one of the most important principles of constitutional law." *Id.* And most importantly, the record justifying a finding of non-waiver is so strong that we are absolutely convinced that the bankruptcy court would have made the same ruling even if it had known of its error. We turn now to an examination of that record.

■ Although the Dabah Wives did not raise the Fifth Amendment privilege in their first set of objections, they did state that "[t]he foregoing is without waiver of any other defenses or objections to the Subpoena." This is an insufficient assertion of privilege but it did, at the very least, make the Trustee aware that other objections might be forthcoming. In *Brock v. Gerace*, 110 F.R.D. 58 (D.N.J.1986) the court held that defendant's counsel's informal notice that a privilege objection might be made later was not a waiver through non-assertion. The court said that "although the Fifth Amendment privilege was not invoked in the manner required ..., there was a clear and timely statement by counsel of the client's refusal to answer in the event that the pending objections were overruled." *Id.* at 64. The court also noted that while other privileges and objections might easily be lost through non-assertion, "[t]he court must be reluctant,

however, to equate the loss of the Fifth Amendment privilege with the loss of other discovery privileges of less fundamental scope." *Id.*

Also, the bankruptcy court (accepting the argument of the Trustee) had already told the Dabah Wives in response to their motion to quash the subpoenas that assertion of spousal privilege was premature unless in response to specific questions. Bankruptcy Judge's opinion of February 2, 1996 (transcript at 11–12). It thus seems somewhat unreasonable to penalize them for waiting to assert the Fifth Amendment privilege until they were responding to specific questions.

 Furthermore, there could not be a waiver under Rule 45 if the Dabah Wives had no firm basis for asserting the privilege in December 1995 (when they first stated their other objections to these subpoenas) and only acquired that basis later. See *United States v. Balsys*, 119 F.3d 122, 140 (2d Cir.1997) ("when time passes and circumstances change between a waiver and a subsequent appearance, the initial waiver may not be applied to the subsequent event."), *reversed on other grounds*, —— U.S. ——, 118 S.Ct. 2218, 141 L.Ed.2d 575 (1998). *See also United States v. Hatchett*, 862 F.2d 1249, 1252 (6th Cir.1988) (remanding for determination whether appellant had reasonable fear of self-incrimination during Rule 33 time period). Although the bankruptcy judge did not address changed circumstances, he did have before him an affidavit from an attorney for the Dabah Wives indicating that recent events had helped the attorney conclude that the Dabah Wives did indeed have a basis for assertion of the Fifth Amendment privilege. Affidavit of Gerald B. Lefcourt dated December 10, 1996. Significant among these events was a statement by the Delaware bankruptcy court in June 1996 (six months after the relevant subpoenas were issued) that it was "aware that the Dabba's [sic] in the past concealed assets." *Id.* at p. 2. We note in this regard that the Trustee has not disputed the bankruptcy court's finding that the privilege, once asserted, was sufficiently supported. The Trustee argues that it has no basis to dispute the validity of the privilege assertion since it was not privy to the bankruptcy court's in camera review of the documents. However, it could have asked both the district court and this court to review the documents again and it did not do so.

Moreover, it does not appear that the Trustee will be prejudiced by the Dabah Wives' late assertion of the Fifth Amendment. See *Klein v. Harris*, 667 F.2d 274, 288 (2d Cir.1981) ("waiver of the fifth amendment's privilege against self-incrimination should be inferred only in the most compelling of circumstances. Such circumstances do not exist unless a failure to find a waiver would prejudice a party to the litigation.") (citation omitted). See also *Brock*, 110 F.R.D. at 64 (finding no prejudice from late assertion); *Kave*, 760 F.2d at 353 n. 22 (same). Although under the original terms of the Plan, § 7.6(a) (providing for transfer of Unscheduled Assets to the Trust) was due to expire this year, the Delaware bankruptcy court, as previously noted, has extended the provision by three years, perhaps as a result of the very discovery delays of which the Trustee complains. Also, there obviously is no cognizable prejudice *solely* from denying the Trustee documents that he would have received had we found waiver of the Fifth Amendment privilege. Since production of the documents was privileged, the Trustee never had a legal right to expect them.

In support of its position, the Trustee cites cases from a variety of jurisdictions, all of which are distinguishable. Many involved some additional default before finding a waiver of privilege and in none of them did an appellate court reverse a trial court's finding of no waiver. For example, in *Davis v. Fendler*, 650 F.2d 1154 (9th Cir.1981), the Ninth Circuit affirmed the district court's entry of a default judgment against Fendler for various discovery abuses. Fendler's first objection to the subpoena he received was untimely and did not include a later-asserted claim of Fifth Amendment privilege. *Id.* at 1157. Fendler subsequently ignored a letter from opposing counsel attempting to resolve the impasse, failed to comply with an order to set forth his claims of privilege specifically and ignored another letter from opposing counsel threatening to move for sanctions. *Id.* at 1158. On these facts, the Ninth Cir-

cuit held that the trial court was justified in striking Fendler's answer to the complaint and entering a default judgment against him pursuant to Rule 37(b). *Id.* at 1161. On the question of the Fifth Amendment, the court did not hold that Fendler had waived the privilege, but affirmed the trial court's finding that he had not supported his claim. *Id.* at 1160. Fendler's lack of diligence in asserting the Fifth Amendment was simply "the context in which such a claim is made," *Id.*, which the court considered in concluding that Fendler's assertion was insufficient. Here, by contrast, the Dabah Wives asserted other objections within the proper Rule 45 time limit, have not flagrantly ignored communications and court orders and were deemed by the bankruptcy court (after two days of in camera review) to have adequately supported their privilege claim once it was made.

In *Hurst v. F.W. Woolworth Co.*, 1997 WL 61051 (S.D.N.Y.1997), which involved the attorney-client privilege, defendant Woolworth failed to provide a privilege log comporting with the requirements of a local rule and had been explicitly warned by plaintiff that it risked waiver of the privilege. Nevertheless, the district court asked itself "whether the circumstances of this case warrant a finding of waiver on that basis," *Id.*, 1997 WL 61051 at *4, and looked to "the nature of the violation, its willfulness or cavalier disregard for the rule's requirements, and the harm which results to other parties," before finding waiver to be justified. *Id.* (quoting *AFP Imaging Corp. v. Philips Medizin Systems*, 1993 WL 541194, *3 (S.D.N.Y.1993)).

Similarly, in Day v. Boston Edison Company, 150 F.R.D. 16 (D.Mass.1993), a magistrate judge faced with an untimely claim of Fifth Amendment privilege focused on the "procedural gamesmanship and dilatory tactics" of the plaintiff in finding that he had waived the privilege. *Id.* at 22–23. The Trustee argues (as it did in the bankruptcy court) that such gamesmanship was evident here. However, the bankruptcy court apparently disagreed—surely a determination that was permissible on the record before it, which included the affidavit from the Dabah Wives' counsel described above. Moreover,

the district court obviously agreed with the bankruptcy court's conclusion, stating that "there is no proof in this record that the Dabah Wives' assertion of the privilege was delayed for opportunistic reasons" and that they "have at least not acted in obvious bad faith." 213 B.R. at 887. While the bankruptcy court was not as explicit as the district court in rejecting bad faith, in view of the Trustee's allegations the bankruptcy court obviously considered the issue and impliedly found no bad faith, a factual determination that is not clearly erroneous.

The other cases cited by the Trustee also do not demonstrate that a trial court *must* deem all untimely raised objections to be waived. See e.g., *Adams v. Cananagh Communities Corp.*, 1988 WL 64097 (N.D.Ill. 1988) ("*Generally*, the failure to object to a discovery request within the time provided by the Federal Rules constitutes a waiver.") (emphasis added); *Hansel & Gretel Brand v. Savitsky*, et al., No. 94 Civ. 4027, transcript at 19 (S.D.N.Y.1997) (looking to past, and potential future, prejudice to opponent in deeming untimely assertion of privilege to be waiver). Accord, *Marx v. Kelly, Hart & Hallman, P.C.*, 929 F.2d 8, 12 (1st Cir.1991) ("If the responding party fails to make a timely objection ... he *may* be held to have waived any or all of his objections.") (emphasis added); *First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 902 F.Supp. 1356, 1360–63 (D.Kan.1995) (summarizing the law).

It is evident from the preceeding discussion that the bankruptcy court's error in concluding that the privilege was timely asserted had no impact on the outcome of this case and that the court would have ruled the same way even if it had known of its error. Moreover, on this record its ruling cannot be characterized as an abuse of discretion in view of the wide discretion afforded to trial courts in ruling on discovery issues, the heavy presumption against waiver of the Fifth Amendment privilege against self-incrimination, the bankruptcy court's apparent view (and the district court's more clearly expressed one) that the Dabah Wives did not act in bad faith, the Dabah Wives' adequate support of their claim of privilege once it was made (confirmed by two days of in camera

review by the bankruptcy court) and the possibility that the fear of prosecution arose or became heightened after issuance of the subpoenas.

## 2. Res judicata

▆ As part of its argument that assertion of the Fifth Amendment privilege is barred as a matter of law, see discussion in Section II.B.1 above, the Trustee also claims that the Dabah Wives are precluded from asserting the Fifth Amendment privilege by the "principles" of res judicata or some related doctrine like "law of the case." It argues that the Dabah Wives' failure to raise. the privilege in their motion to quash the subpoenas, or in their appeal of the denial of that motion, bars its assertion at a later stage of the proceedings. This argument need not be discussed at length. To a significant degree the Trustee simply restates its waiver argument, i.e. the Dabah Wives should have raised the privilege earlier and should not be heard to do so now. To that extent, this claim has already been addressed and we will not repeat our analysis. As to the remainder of the Trustee's argument, we do not believe that res judicata or any related doctrine applies here.

The Trustee argues that case law within this circuit demonstrates that a witness may not raise the Fifth Amendment for the first time at a hearing on a motion for contempt for failure to comply with a subpoena. The Trustee cites the Supreme Court's decision in *United States v. Rylander*, 460 U.S. 752, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983), and the Second Circuit's opinions in *United States v. Edgerton*, 734 F.2d 913 (2d Cir.1984), and *United States v. Secor*, 476 F.2d 766 (2d Cir.1973), for this proposition. It also cites some recent Southern District cases and argues that the bankruptcy court erred in declining to follow them. See *United States v. Kirksey*, 631 F.Supp. 165 (S.D.N.Y.1986); *United States v. Fein*, 1985 WL 254 (S.D.N.Y.1985); *S.E.C. v. Oxford Capital Sec., Inc.*, 794 F.Supp. 104 (S.D.N.Y.1992).

▆ It is true that these cases emphasize that "a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed

...." *Rylander*, 460 U.S. at 756, 103 S.Ct. 1548. However, in each of these cases there was a prior appealable order alleged to have been disobeyed. The doctrine of res judicata simply does not apply where, as here, there is no prior final or appealable order. See *Milltex Indus. Corp. v. Jacquard Lace Co., Ltd.*, 922 F.2d 164, 167 (2d Cir.1991); *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 90 (2d Cir.1961); cf. *Associated Gen. Contractors v. City of New Haven*, 41 F.3d 62, 67 (2d Cir.1994) (reason for vacatur of district court judgments when appeal is dismissed as moot is that "[a] party should not suffer the adverse res judicata effects of a district court judgment when it is denied the benefit of appellate review through no fault of its own.").

*Rylander, Edgerton, Secor, Kirksey* and *Fein* all involved enforcement orders of summonses issued by the Internal Revenue Service. Although "orders enforcing subpoenas issued in connection with civil and criminal actions, or grand jury proceedings, are [generally] *not* final, and therefore *not* appealable," *United States v. Construction Products Research, Inc.*, 73 F.3d 464, 468 (2d Cir.1996) (emphasis in original), "IRS summons enforcement orders *are* subject to appellate review." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 15, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992) (emphasis in original). *Oxford* involved defendants who "consented to Final Judgments of Permanent Injunction" that called for production of the relevant documents. 794 F.Supp. at 105. In all of the Trustee's cases, therefore, the requirements for applicability of the doctrine of res judicata were met. In this case, by contrast, the bankruptcy court's denial of the Dabah Wives' motion to quash was a non-appealable, non-final order (and indeed the Dabah Wives' appeal from it was dismissed on that basis). See *In re DG Acquisition Corp.*, 208 B.R. at 326. Since the Dabah Wives had no immediate means to obtain appellate review of their motion to quash, cf. *Construction Products*, 73 F.3d at 469, the doctrine of res judicata does not apply.

▆ As for the Trustee's vague assertion that, if res judicata is inapplicable, some other doctrine like law of the case applies,

our answer is the same. "Where there has been no review even though an appeal has been taken, it is equivalent to the party not having had an opportunity to appeal, and prevents the challenged decision from becoming the law of the case." *Aviall, Inc. v. Ryder System, Inc.*, 110 F.3d 892, 897 (2d Cir.1997). The principles underlying res judicata and law of the case, by whatever label, simply do not apply to this case.

### III. Conclusion

Although the bankruptcy court interpreted Rule 45 incorrectly and erroneously believed that assertion of the act of production privilege would have been premature before the depositions, it is clear that it would have ruled the same way even if it had been advised of its errors. Moreover, on these facts such a ruling could not be labeled an abuse of discretion. We have considered all of the Trustee's arguments and we find that none of them warrants reversal. The decision of the bankruptcy court (as affirmed by the district court) is affirmed.