**NEW YORK MARINE & GENERAL INSURANCE COMPANY,**
Plaintiff,

v.

**TRADELINE (L.L.C.) and Deepak Fertilisers and Petrochemicals Corp. Ltd., Defendants.**

No. 98 CIV. 7840HBDFE.

United States District Court,
S.D. New York.

Feb. 16, 1999.

As Amended May 20, 1999.

Harry A. Gavalas, Timothy G. Hourican, Chalos & Brown, P.C., New York City, John A.V. Nicoletti, Nicoletti, Hornig & Sweeney, New York City.

## AMENDED MEMORANDUM AND ORDER

EATON, United States Magistrate Judge.

New York Marine & General Insurance Company ("NYMGIC") served a four-part motion on January 7. On the return date, January 28, Judge Baer forwarded the motion to me, to be decided under his January 7 Order of Reference to me for general pretrial supervision.

1. *The motion to disqualify the law firm of Nicoletti Hornig & Sweeney ("NH & S)"*

NYMGIC brought this declaratory judgment action, seeking a ruling that it does not have to pay out on two of its Special Marine Policies in favor of Deepak Fertilisers and Petrochemical Corp. Ltd. ("Deepak"). Deepak, a corporation located in India, alleges that it suffered a huge loss when a cyclone struck the Port of Kandla while Deepak's cargo was being unloaded. On 11/23/98 Deepak met for the first time with the New York law firm of NH & S, and then retained NH & S. *See* 1/20/99 aff. of John Nicoletti ¶ 19.

NYMGIC asserts that Mr. Nicoletti and his law firm should be disqualified because Mr. Nicoletti represented NYMGIC in two matters. The first was *Continental Ins. Co. v. Lone Eagle Shipping, Ltd.,* 134 F.3d 103 (2d Cir.1998), which was closed by the Second Circuit's decision ten months before the meeting with Deepak. The second was a dispute about whether a reinsurance policy covered monies paid by Texaco in a racial discrimination class action; the reinsurance dispute was settled in writing three days before the meeting with Deepak. *See* 1/20/99 Nicoletti aff. ¶¶ 3–18.

In both matters, however, NYMGIC was merely one of several following underwriters and was contractually bound to follow the Leading Underwriter in all respects on policy and claim settlements. *See* 1/20/99 aff. of Brian Sales, who until 1997 was an officer of the Leading Underwriter on both matters.

■ The law on attorney disqualification in the Second Circuit was thoroughly explained by Magistrate Judge Roberts in *Chemical Bank v. Affiliated FM Ins. Co.,* 1994 WL 141951 (S.D.N.Y.). At *10, she noted:

In the context of dual representation, the Second Circuit has articulated two distinct rules with respect to disqualification. The more stringent of the two, known as the "per se" rule, pertains to situations involving the continuous, simultaneous representation of "traditional" clients. The second rule, requiring the courts to apply a "substantial relationship" test, pertains in two situations: 1) when disqualification concerns a former client; and 2) "for cases of vicarious or attenuated representation."

NYMGIC asserts that it is not a "former" client; it says that, although it signed the settlement agreement on 11/20/98, the Texaco claim "will not be concluded until the execution and exchange of certain documents." *See* 1/27/99 aff. of Paul Smith ¶ 4. This reply affidavit does not say that any such documents are to be drafted by Mr. Nicoletti's law office. Nor does it contradict Mr. Nicoletti's 1/20/99 affidavit at ¶¶ 15 and 17:

[T]he actual negotiations of the settlement were solely handled between the principals.

\*   \*   \*   \*   \*   \*

After November 13, 1998, this office no longer provided legal services of a substantive nature to AAMS [the Leading Underwriter] or any other followers. From that date forward, this office merely acted as a clearing house. . . .

In any event, it is clear that Mr. Nicoletti gave NYMGIC only "vicarious or attenuated representation," on both the Lone Eagle matter and the Texaco matter. In both matters, as in *Chemical Bank* at *18, "when it came to guiding [the attorney's] actions . . . an entity stood between" Mr. Nicoletti and NYMGIC. That entity was the Leading Underwriter. None of the following underwriters, including NYMGIC, participated in the investigation of either claim, nor in the decision to select Mr. Nicoletti, nor in deciding litigation strategy. See 1/20/99 aff. of Brian Sales ¶¶ 6–11. NYMGIC paid a percentage of the legal fees, was copied on correspon-

dence, and attended three or four meetings with Mr. Nicoletti and the Leading Underwriter. But NYMGIC does not allege that it ever had a private, one-on-one meeting with Mr. Nicoletti or any lawyer in his firm. Hence our case is even clearer than *Chemical Bank*, where the objecting client had one-on-one meetings with the attorney "on at least eleven occasions" when they "were the only participants." *Chemical Bank* at *3.

■ Accordingly, we must apply the "substantial relationship" test. As originally formulated by Judge Weinfeld, this test asked whether "the attorney might have acquired information related to the subject matter of the subsequent representation." *T.C. Theatre Corp. v. Warner Bros. Pictures,* 113 F.Supp. 265, 269 (S.D.N.Y.1953). Since then, however, this test has been

> "honed" in practical application to grant disqualification "only upon a showing that the relationship between issues in the prior and present cases is 'patently clear.' Put more specifically, disqualification has been granted and approved recently only when the issues involved have been 'identical' or 'essentially the same.' "

*Chemical Bank* at *12, quoting *Government of India v. Cook Industries, Inc.,* 569 F.2d 737, 739–40 (2d Cir.1978).

■ The issues in our case are Deepak's claim that rainwater damaged its cargo during unloading, and NYMGIC's claim that it thought the rainwater coverage "was to commence at some future date." *See* pp. 1–2 of 9/21/98 rejection letter from Chalos & Brown, Exh. 6 to 1/20/99 Nicoletti aff.; Complaint ¶¶ 8–23. These issues are not "essentially the same" as those in the Texaco reinsurance matter, which involved a class action for racial discrimination. Nor are our issues "essentially the same" as those in the *Lone Eagle Shipping* matter, which involved hull damage caused either by heavy weather or pre-existing rust. *See* 1/20/99 aff. of Brian Sales ¶¶ 3–10; *Continental Ins. Co. v. Lone Eagle Shipping Ltd.,* 134 F.3d at 104 (2d Cir.1998).

Accordingly, no evidentiary hearing is necessary, and I deny the motion to disqualify Mr. Nicoletti's law firm.

### 2. The motion to amend the complaint

■ NYMGIC seeks to amend its complaint to identify the plaintiff as Mutual Marine Office, Inc. ("MMO") as attorney-in-fact for NYMGIC. This exercise would seem to have only one motive—to turn MMO formally into a party and thus bolster the third part of this motion, which argues that subpoenas served on MMO are unenforceable.

I deny leave to make the amendment, because NYMGIC has shown no legitimate reason for it. The existing complaint, at ¶¶ 5, 8–9, 15–29, adequately describes the role of MMO in the disputed transaction. Moreover, the existing complaint was served by the Clerk on or about January 6 on the other defendant Tradeline (L.L.C.), a Dubai corporation. Amending the complaint might give Tradeline an unnecessary excuse to delay serving an answer.

### 3. The motion to quash the subpoenas served on MMO

■ Deepak served eight subpoenas on MMO with notice to NYMGIC—six of them were served on December 3, one on December 7, and one on December 29. *See* 1/20/99 Nicoletti aff. ¶ 21 and Exh. 3. These eight subpoenas sought document production on January 15 and seven depositions starting February 4. It appears to be undisputed that NYMGIC has no employees and relies exclusively upon the employees of its attorney-in-fact MMO to conduct its insurance business. *See* 1/6/99 Pl's Mem. at 5.

At some point Deepak served Rule 34 requests on NYMGIC. Pl's Reply Mem. at 14 says that NYMGIC responded on January 4 and "indicated" that "all non-privileged or otherwise protected documentation are [is] available for inspection or copying at this firm. Further, as NYMGIC does not maintain files of its own ..., the documentation that has been made available ... is in essence MMO's own files." But NYMGIC does not allege that it provided a privilege log as required by F.R.Civ.P.Rule 26(b)(5) and Local Civil Rule 26.2. See also F.R.Civ.P.Rule 45(d)(2).

On January 7 NMMGIC moved to quash the document subpoena and the seven deposition subpoenas served on its attorney-in-fact MMO. As to all but the last of the deposition subpoenas, January 7 was well beyond the 14–day deadline specified in one part of F.R.Civ.P.Rule 45, but I decline to find that the delay caused a waiver. There is no "unmistakable deadline [in Rule 45] for assertion of objections," at least to the extent they concern privileges. *In re DG Acquisition Corp.*, 151 F.3d 75, 81–82 (2d Cir.1998).

On the merits, the motion to quash is frivolous. NYMGIC's initial brief at 7–8 argues that the subpoenas are "unenforceable" because the relationship between NYMGIC and MMO is so interwoven that MMO "can be treated as a party" and therefore Deepak should have proceeded under Rules 30 and 34 and not under Rule 45. So why didn't NYMGIC and MMO simply treat the subpoenas as Rule 34 requests (and Rule 30 deposition notices)? Why force the Court to read a motion to quash the subpoenas so they can be re-labeled?

NYMGIC's shell game causes expense and delay, and I suspect it may have an additional motive. I suspect that NYMGIC and its agents may be trying to avoid producing some non-privileged documents. After all, the Rule 34 requests required NYMGIC to produce (or describe in a privilege log) all specified documents in its custody or control, and those would include all documents in the possession of MMO or in the possession of MMO's employees. If NYMGIC was in full compliance with the Rule 34 requests, why did it move to quash the subpoena for MMO's documents? Why didn't MMO simply certify that it had no responsive documents other than the ones already produced in response to the Rule 34 requests to NYMGIC? Perhaps the Rule 34 requests were less extensive than the document subpoena, but NYMGIC does not allege that.

I deny the motion to quash the eight subpoenas served on MMO. The document subpoena, however, includes some very broad paragraphs in the 42 paragraphs of its Schedule A. I do not know whether the Rule 34 request was just as broad, and I do not know if NYMGIC served any objections to

them. The January 7 motion does not object to any specific paragraphs in the document subpoena. However, at this juncture, I will only set a deadline for compliance with Schedule A's Paragraphs 1–4, 10–14, 17–28, and 42. As to the other paragraphs in Schedule A, the attorneys must confer with each other in a good faith attempt to narrow any disputes. If they want a ruling on any discovery dispute (including scheduling disputes) they must send me a *single joint letter* pursuant to my Standing Order for Discovery Disputes (enclosed).

I direct MMO to serve, by February 23, a privilege log describing separately, in chronological order, the date, author, distributees and subject matter of each separate document (responsive to Paragraphs 1–4, 10–14, 17–28 or 42) as to which MMO asserts attorney-client or work-product privilege (and specify which privilege). Privilege is waived as to any document which is not described in timely fashion on the privilege log (which must thereafter be updated within one month of the creation of any new privileged documents).

I further direct MMO to produce, by February 23, all documents which are not described on the privilege log and which are responsive to Paragraphs 1–4, 10–14, 17–28 or 42 of Schedule A of the subpoena for documents.

As to the seven deposition subpoenas, MMO gives no coherent reason to quash, but I can think of a reason to delay the depositions—the parties should wait to see if Tradeline appears and asks to attend the depositions. Until further order from me, or unless the parties agree otherwise in writing, each of the seven depositions is adjourned exactly eight weeks, and no other depositions shall be taken until each of those seven depositions has run at least six hours or has been completed.

### 4. *The motion to quash the subpoenas served on NYMGIC's attorneys*

On December 14, Deepak served a document subpoena on Chalos & Brown, P.C. and a deposition subpoena on the attorney in that firm, Harry Gavalas, who wrote the 9/21/98

letter rescinding Special Marine Policies 377 and 378. *See* 1/20/99 Nicoletti aff. ¶ 22, Exh. 5 and Exh. 6. The fourth part of this January 7 motion seeks to quash those two subpoenas.

■ Point IV of NYMGIC's initial brief was inadequate, but its reply papers include the 1/27/99 affidavit of Marie Ballirano, who alleges that the factual investigation of Deepak's claim was conducted by three MMO employees and not by their attorneys. Deepak can probe these allegations, because it will be deposing at least two of those employees. For the time being, I will adjourn the deposition of Mr. Gavalas without date, pending a future affidavit from Mr. Nicoletti showing specific reasons why he needs to depose the attorney.

■ As to the document subpoena served on Chalos & Brown, I will adjourn it without date if, by March 2, Mr. Gavalas serves and files an affidavit stating that he has searched his own files and those of his law firm, and that there is no document which (a) the firm received from NYMGIC or MMO and (b) was in the firm's custody or control at any point after 12/2/98, and (c) was responsive to Paragraphs 1–4, 10–14, 17–28 or 42 of Schedule A, and (d) has not been specified on MMO's privilege log or produced by MMO. *See Asset Value Fund Limited Partnership v. The Care Group, Inc.,* 1997 WL 706320 at *9 (S.D.N.Y.) (Francis, M.J.) As a general matter, a client does not transform an unprivileged document into a privileged one by transferring custody of it from the client to the attorney.