Louis C. ABRUZZO, Benny L. Abruzzo and Richard J. Abruzzo, Co–Personal Representatives of the Estate of Benjamin L. Abruzzo, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 509–89T.

United States Claims Court.

Sept. 5, 1990.

James F. Beckley, Albuquerque, N.M., for plaintiffs.

Steven I. Frahm, Washington, D.C., with whom were Asst. Atty. Gen. Shirley D. Peterson, Mildred L. Seidman and Gerald B. Leedom, for defendant.

## ORDER

LYDON, Senior Judge:

In this tax refund suit, the parties seek the court's intervention regarding disputes over the discovery of expert witnesses.

Plaintiffs have filed a motion for a protective order in which they seek to protect from disclosure the reports prepared by their expert witness until such time as defendant discloses the report of its own expert witness.[1] In response, defendant filed a motion to compel plaintiffs to disclose their expert witness report, and to compel plaintiffs to respond more fully to defendant's interrogatories and to defendant's requests for production of documents. For the following reasons, the court denies plaintiffs' motion for a protective order and grants defendant's motion to compel discovery in the manner set forth below.

### FACTS

Plaintiffs filed suit in this court seeking a refund of estate taxes paid, including interest and penalties, in the sum of $3,323,935.68. Since the primary issue in the case involves the value of decedent's stock interest in four closely-held corporations, plaintiffs retained the services of a valuation firm, Desmond & Marcello (D & M). D & M prepared an initial three-page valuation report for the decedent's estate tax return, dated November 1, 1985, which has already been provided to defendant. Plaintiffs admit that D & M has also prepared a draft report for litigation purposes, but plaintiffs refuse to complete and disclose D & M's final valuation report until all factual discovery has been completed in this case, or until such time as defendant identifies and discloses its expert witness and report. In defendant's reply brief of August 27, 1990, defendant indicated that it has retained Valuation Counselors, Inc. as its valuation experts, and has so informed plaintiffs.

On March 5, 1990, plaintiffs stated in a Joint Preliminary Status Report that D & M's valuation report would be furnished to defendant immediately upon completion. Plaintiffs maintain that when they made this statement, plaintiffs believed that D & M's final report would be ready in March 1990, and that defendant would not be retaining any additional experts other than

---

1. In its reply brief, defendant has indicated that it has recently retained Valuation Counselors, Inc. as its valuation experts, and has so informed plaintiffs.

those defendant had already retained (for purposes of the Internal Revenue Service investigation) at the time of the March 1990 joint status report.

On May 8, 1990, defendant served its Third Set of Interrogatories and Third Request for Production of Documents on plaintiffs. Defendant's Interrogatory No. 31 contains a RUSCC 26(b)(3) inquiry with regard to plaintiffs' expert witness.[2] RUSCC 26(b)(3)(A)(i) allows a party, through interrogatories, to require an adverse party to identify the name of each expert witness the adverse party intends to call at trial, the subject matter of each expert's anticipated testimony, the substance of the facts and opinions to which the expert will testify, and a summary of the grounds for each opinion. In this case, defendant's Interrogatory No. 31 substantially tracks the language of RUSCC 26(b)(3)(A)(i) in seeking to discover such information about plaintiffs' valuation expert. In response to defendant's Interrogatory No. 31, plaintiffs identified the names and addresses of the four experts whom plaintiffs expect to testify at trial, including D & M, and plaintiffs identified the subject matter of their experts' testimony as the value of decedent's interest in certain business entities and real estate holdings. With regard to the substance of the facts and opinions to which the experts are expected to testify, and the summary of the grounds for each of their opinions, plaintiffs stated that this information was contained in the November 1, 1985 D & M valuation report, as well as in the valuation report that D & M was currently preparing.

Defendant's Third Request for Production of Documents contains fifteen separate requests for documents, all of which appear to be reasonably related to the valuation issue in this case, with the possible exception of Request for Production No. 15, as it relates to Interrogatory No. 35, discussed *infra.*

On June 19, 1990, defendant received plaintiffs' responses to defendant's Third Set of Interrogatories and Third Request for Production of Documents. Plaintiffs stated in their answers to Interrogatory Nos. 23 through 26 that "a new Valuation Report is being prepared and will be furnished when completed." Plaintiffs objected to Interrogatory No. 35, which asked for information regarding sales or transfers of property of any entity, or sales or transfers of interests in any entity whose value is at issue in this case from 1984 to the present. Plaintiffs' objection to Interrogatory No. 35 alleged that the interrogatory was overbroad, extremely burdensome and oppressive, and sought mostly irrelevant information. Nonetheless, plaintiffs affirmed that some sales and transfers took place during that time period, and indicated that "some of the relevant information requested is being gathered and organized and will be furnished at a later date."

Plaintiffs' response to defendant's document request merely stated that plaintiffs were currently in the process of collecting all documents requested, and that copies of the documents requested would be furnished to defendant as soon as they are ready. Plaintiffs produced no documents at that time, and plaintiffs voiced no objection at that time to the production of any of the documents requested.

Counsel for both parties tried to work out their discovery problems by telephone calls and by written correspondence between June 20 and July 2, 1990. Defendant contacted plaintiffs' counsel by letter

---

2. RUSCC 26(b)(3)(A) states, with regard to discovery of expert witnesses, as follows:

(3) *Trial Preparation: Experts.* Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows: (A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

(ii) Upon motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to subdivision (b)(3)(C) of this rule, concerning fees and expenses as the court may deem appropriate.

on June 20, 1990, informing plaintiffs' counsel that, in defendant's view, plaintiffs' responses to defendant's Third Set of Interrogatories and Third Request for Production of Documents were deficient and untimely. During the course of these communications, plaintiffs' counsel stated they were unwilling to provide defendant with D & M's final valuation report until defendant's expert report was disclosed. On July 2, 1990, defendant received plaintiffs' amended response to defendant's Third Request for Production of Documents, in which plaintiffs objected to the production of, *inter alia,* all drafts of the valuation report prepared by plaintiffs' experts D & M. On July 9, 1990, defendant received from plaintiffs some of the documents sought in defendant's request for production, but defendant maintains that plaintiffs' response is still incomplete, specifically with regard to Interrogatory No. 35 and Request for Production Nos. 12–15.

In plaintiffs' brief supporting their motion for a protective order, filed with the court on July 3, 1990, plaintiffs maintain that for "strategic litigation purposes, [D & M's] report will not be finalized until all factual discovery is completed in this case." Subsequently, defendant filed its motion to compel discovery on July 19, 1990.

## DISCUSSION

### I

■ Discovery of expert witnesses who are expected to testify at trial is governed by the provisions of RUSCC 26(b)(3), which is similar to Rule 26(b)(4) of the Federal Rules of Civil Procedure. *See White Mountain Apache Tribe of Arizona v. United States,* 4 Cl.Ct. 575, 583 (1984). The purposes of the provisions regarding discovery of expert witnesses are to facilitate preparation of effective cross-examination and rebuttal testimony, and to make the fact-finder's task more manageable by an orderly presentation of complex fact issues. *See Jefferson v. Davis,* 131 F.R.D. 522, 525 (N.D.Ill.1990). Like Rule 26(b)(4) of the Federal Rules, RUSCC 26(b)(3) embodies a two-step approach to the discovery of expert testimonial witnesses. The first step requires that a party serve the adverse party with interrogatories to discover the identity of the expert witnesses hired by the other side to testify at trial, as well as the experts' opinions, and the factual and theoretical underpinnings of such opinions. Step two allows a discovering party, after serving interrogatories, to seek by motion further discovery by other means, usually by deposing the other side's experts or by compelling disclosure of the experts' reports. *See In re IBM Peripheral EDP Devices Antitrust Litigation,* 77 F.R.D. 39, 41 (N.D.Cal.1977); *United States v. IBM Corp.,* 72 F.R.D. 78, 81 (S.D. N.Y.1976); 4 *Moore's Federal Practice* ¶ 26.66[3], at 26–416, –417 (2d ed.). The second step of the process delegates to the court broad discretion to determine whether further discovery should be ordered by other means. *See Herbst v. International Tel. & Tel. Corp.,* 65 F.R.D. 528, 529 (D.Conn.1975).

Plaintiffs' motion for a protective order seeks to prevent the disclosure of any draft or final report prepared by D & M until defendant discloses the report of its expert. Plaintiffs' motion is premised on their allegation that defendant will benefit, at plaintiffs' expense, from plaintiffs' diligence in hiring D & M to prepare a valuation report for litigation purposes.

In support of its motion for a protective order, plaintiffs advance four arguments that will be considered *seriatim.* First, plaintiffs offer their fear that defendant will benefit at plaintiffs' expense if plaintiffs are forced to disclose the D & M valuation report at this time. According to plaintiffs, this argument falls within the "litigation fairness" doctrine, which plaintiffs find implicit in RUSCC 26(b)(2) & (3). Plaintiffs argue that it would be unfair to force plaintiffs to disclose their expert's reports before defendant has disclosed the identity and the valuation report of its expert witness. In Interrogatory No. 4 propounded to defendant, plaintiffs sought to discover the identity of defendant's expert witness, as well as the substance of the facts and opinions of the expert's anticipated testimony, as permitted by RUSCC

26(b)(3)(A)(i). Defendant responded to this inquiry by stating that it had not yet determined who it would call as an expert witness. Presumably, now that defendant has retained valuation experts, defendant has fully supplemented its response to plaintiffs' interrogatory regarding defendant's expert witness. If not, defendant shall do so forthwith.

As stated above, the two-step procedure of RUSCC 26(b)(3)(A) is designed to minimize the risk of one party benefiting from the diligence of the other side by requiring, in step one, that the discovering party serve interrogatories in advance of seeking discovery by other means, as contemplated by step two. In this case, both parties have served the interrogatories necessary to satisfy step one. Defendant has proceeded to step two in seeking to compel plaintiffs to disclose any and all completed reports of their expert.

Plaintiffs argue that defendant should not be allowed to obtain a copy of plaintiffs' expert's reports until defendant answers plaintiffs' interrogatories by disclosing the identity of its expert and the substance of his testimony. In *Rupp v. Vock & Weiderhold, Inc.*, 52 F.R.D. 111, 113 (N.D. Ohio 1971), the court refused to condition defendant's motion to compel plaintiff to answer defendant's expert witness interrogatories on defendant's response to plaintiffs' interrogatories, where, like the present case, defendant had responded to plaintiff's interrogatories by stating that defendant had not yet determined who it would call as an expert witness. However, the court also stated that it would consider staying defendant's request to depose plaintiff's experts until defendant had hired its own experts and had answered plaintiffs' interrogatories regarding those experts. Moreover, in *Jefferson, supra*, the court opined that "complete and sufficient answers to interrogatories are and ought to be a precondition to court approval of expert witness depositions." *Jefferson, supra*, 131 F.R.D. at 527.

█ The court feels that, in fairness to plaintiffs, defendant should be required to fully answer plaintiffs' Interrogatory No. 4

regarding defendant's expert witness as provided in RUSCC 26(b)(3)(A)(i) before plaintiffs will be required to disclose the reports of their expert witness. Defendant indicated in its reply brief that it has provided plaintiffs with the identity of its valuation experts. Presumably, defendant has also provided the rest of the information plaintiffs seek with regard to defendant's expert witness, and if not, defendant shall do so forthwith. Upon defendant's full response to plaintiffs' Interrogatory No. 4, plaintiffs will be required to provide defendant with all existing copies of D & M's valuation report, including draft and final versions.

█ The court does not agree, however, with plaintiffs' argument that they should not be required to disclose their expert's reports until defendant discloses its expert's report. Plaintiffs are willing to disclose their expert's reports in a mutual exchange at the time defendant's expert's report is completed. However, no mutuality requirement or contemporaneous exchange provision can be read into the two-step procedure of RUSCC 26(b)(3)(A). "A party's discovery of expert witnesses is not conditioned by the text of Rule [26(b)(4)] on the adversary's ability or willingness to conduct such discovery in any reciprocal fashion." Day, *Expert Discovery in the Eighth Circuit: An Empirical Study*, 122 F.R.D. 35, 44 (1988). *See also* 4 *Moore's Federal Practice, supra*, ¶ 26.66[3], at 26–415.

Morever, there is no indication in the materials before the court that defendant seeks to use the reports of plaintiffs' expert for any improper purpose, or indeed, for any purpose other than to prepare for effective cross-examination and rebuttal of plaintiffs' expert testimony at trial. In fact, defendant states that it does not intend to disclose plaintiffs' expert's report to defendant's expert until defendant's expert has completed his analysis of the value of decedent's stock interest in the four closely-held corporations and, the court adds, has incorporated this analysis into his final report.

On the other hand, plaintiffs have made it abundantly clear that they are purposely withholding the draft and final versions of their expert's valuation report from defendant "for strategic litigation purposes." The court's task in ruling on a motion for further discovery of an expert is to determine whether the Rule 26(b) procedure is being abused. *See In re IBM Peripheral EDP Devices, supra,* 77 F.R.D. at 41. Furthermore, the court must take care that " 'discovery of expert opinion must not be allowed to degenerate into a game of evasion.' " *Jefferson, supra,* 131 F.R.D. at 527 (quoting *Voegeli v. Lewis,* 568 F.2d 89, 97 (8th Cir.1977)). In addition, disclosure of expert reports at the pre-trial stage may facilitate settlement by allowing the parties to fairly evaluate their respective claims. *See United States v. Meyer,* 398 F.2d 66, 69 (9th Cir.1968). Therefore, plaintiffs must disclose their expert's reports as soon as defendant has fully responded to plaintiffs' Interrogatory No. 4. If defendant has already responded fully, plaintiffs must disclose forthwith all existing draft and final reports of its expert.

Plaintiffs' second argument in support of their motion for a protective order is that defendant has not sought a court order, pursuant to RUSCC 26(b)(3)(A)(ii), to compel plaintiffs to produce the reports of their expert witness. Defendant explains in its brief that it relied on plaintiffs' promise to produce the report as soon as it was final, and therefore defendant waited until plaintiffs filed their motion for a protective order before filing a motion to compel discovery. In light of defendant's timely filed motion to compel, plaintiffs' second argument is moot.

■ Plaintiffs' third argument is that defendant has not shown a substantial need for plaintiffs' draft and final valuation reports, nor has defendant shown that it cannot obtain the information it seeks by other means. Plaintiffs cite *Breedlove v. Beech Aircraft Corp.,* 57 F.R.D. 202 (N.D.Miss. 1972), in support of their position. Subsequent case law has rejected the "substantial need" requirement articulated in *Breedlove. See In re IBM Peripheral EDP Devices, supra,* 77 F.R.D. at 41; 4 *Moore's Federal Practice, supra,* ¶ 26.66[3], at 26–416. In *In re IBM Peripheral EDP Devices,* the court found that " '[d]iscovery of the reports of experts, including reports embodying preliminary conclusions, can guard against the possibility of a sanitized presentation at trial, purged of less favorable opinions expressed at an earlier date.' " *In re IBM Peripheral EDP Devices, supra,* 77 F.R.D. at 41 (quoting *Quadrini v. Sikorsky Aircraft Div.,* 74 F.R.D. 594, 595 (D.Conn. 1977)). Therefore, both draft and final versions of expert reports are discoverable, and are not subject to a showing of "substantial need" by the discovering party.

■ Plaintiffs' fourth and final argument, that disclosure of the D & M draft report is protected from disclosure by the attorney-client privilege and the work product doctrine, similarly is not supported by the weight of authority. *See White Mountain Apache Tribe, supra,* 4 Cl.Ct. at 577 (rejecting work product doctrine as rationale for immunizing expert information from discovery); *United States v. 23.76 Acres of Land,* 32 F.R.D. 593, 596 (D.Md. 1963) (rejecting both attorney-client privilege and work product rule as reasons to deny discovery of expert opinions); 4 *Moore's Federal Practice, supra,* ¶ 26.66[1], at 26–405, ¶ 26.66[2], at 26–409. As discussed above, courts have specifically allowed discovery of draft reports of expert witnesses. *See In re IBM Peripheral EDP Devices, supra,* 77 F.R.D. at 41; *Quadrini, supra,* 74 F.R.D. at 595.[3]

■ Plaintiffs argue in the alternative that, if their motion for a protective order is not granted, they should be entitled to fees and costs pursuant to RUSCC 26(b)(3)(C)(i) & (ii). Under RUSCC 26(b)(3)(C)(i), the court must order, unless manifest injustice would result, that the party seeking discovery pay the expert for

---

3. It should be borne in mind that the court's resolution of the discovery dispute regarding expert reports is not intended to reflect a holding for general application but should be confined to the particularized facts of this case.

time spent in responding to further discovery by other means, as ordered by the court under RUSCC 26(b)(3)(A)(ii). Since the court has concluded that plaintiffs' motion for a protective order should be denied, the court will address this alternative argument.

The provision of RUSCC 26(b)(3)(C) requiring the payment of fees and costs by a party pursuing further discovery of expert witnesses contemplates the taking of depositions, which is usually expensive and time-consuming. Defendants in this case seek only the production of existing draft and final reports which have already been prepared by plaintiffs' expert witness. Defendant does not intend that plaintiffs incur additional expenses by requiring D & M to complete the final report if the report is not yet complete. Defendant by its order seeks only the production of those reports already in existence and completed. Plaintiffs would incur no additional expense in producing such reports, and therefore plaintiffs are not entitled to recover any fees or expenses under RUSCC 26(b)(3)(C)(i) or (ii). If at a later date in the proceedings plaintiffs have reason to believe, after defendant discloses its expert report, that defendant improperly benefited by use of plaintiffs' expert's report, plaintiffs are free to seek recovery of fees and costs for such use.

## II

Defendant's motion to compel discovery also seeks to compel plaintiffs to respond with full and complete answers to defendant's Third Set of Interrogatories, and to produce the additional documents requested in defendant's Third Request for Production of Documents. In plaintiffs' reply brief opposing defendant's discovery motions, plaintiffs indicate that they have now filed supplemental responses to defendant's Third Set of Interrogatories and Third Request for Production of Documents.[4] Plaintiffs have appended copies of their supplemental responses to their reply brief.

It is difficult for the court to determine whether plaintiffs' supplemental responses have fully satisfied defendant's interrogatories and document requests. In its reply brief, defendant indicates that it finds plaintiffs' supplemental response to Interrogatory No. 35 and Request for Production No. 15 to be inadequate. Interrogatory No. 35 seeks information regarding post date of death sales or transfers of property interests, and Request for Production No. 15 seeks all documents plaintiffs relied on in responding to Interrogatory No. 35.

In their supplemental response to Interrogatory No. 35, plaintiffs object on relevancy grounds to disclosing information regarding post date of death sales or transfers of property interests. Plaintiffs assert that post date of death sales or transfers are irrelevant to a reasonable inquiry into the value of decedent's assets on the date of death. Interestingly, plaintiffs' supplemental response seems to disclose most, if not all, of the information covered in the interrogatory, including that to which plaintiffs object. Although plaintiffs object to Request for Production No. 15 on the same relevance grounds, their supplemental response to Request for Production No. 15 states that "[a]ll documents requested will be furnished as soon as they are located."

█ Like its predecessor court, this court generally follows the rule that post-death sales of property are not relevant to a determination of the property's fair market value at date of death. *See Estate of Ridgely v. United States,* 180 Ct.Cl. 1220, 1239 (1967). However, the court has also recognized an exception to this general rule: "[E]vidence of a sale taking place after a valuation date has probative force bearing on the value as of the earlier critical date—where there has been no material change of conditions or circumstances in the interim." *Estate of Ridgely, supra,* 180 Ct.Cl. at 1237. *See also Krapf v. United States,* 17 Cl.Ct. 750, 762 (1989).

---

4. It should be noted that plaintiffs have renewed their objection to producing their expert's final valuation report in their supplemental response

to Interrogatory No. 31. This objection has been disposed of in the manner set forth above.

■ It appears that plaintiffs may have a valid basis for their relevance objection to Interrogatory No. 35 and Request for Production No. 15. Therefore, to the extent plaintiffs have not fully answered Interrogatory No. 35 or complied with Request for Production No. 15, the burden shifts to defendant to overcome plaintiffs' relevance objection. *See* RUSCC 26(c); *Centurion Indus., Inc. v. Warren Steurer & Assocs.,* 665 F.2d 323, 325 (10th Cir.1981).

In its reply brief, defendant also indicates that there is some confusion with regard to documents relating to Chace Development Joint Venture, the subject of Request for Production Nos. 12–14. Defendant complains that plaintiffs responded by referring to an entity called Chace Limited X. Defendant's request to have plaintiffs respond with documents related to Chace Development Joint Venture, or to have plaintiffs certify that Chace Limited X is the same entity as Chace Development Joint Venture, is reasonable, and plaintiffs shall comply therewith.

■ If further discovery problems do arise, the court urges both parties to contact the court for assistance in resolving the problem by telephonic conference call before resorting to the formal paper-filing route.[5]

### III

For the reasons set forth above, plaintiffs' motion for a protective order regarding their expert's reports is *denied.* Defendant's motion to compel discovery is *granted* subject to limitations set forth above.

IT IS SO ORDERED.

---

[5]. Under the circumstances, the court feels that plaintiffs' discovery tactics, although not commendable, do not rise to the level of conduct requiring the imposition of sanctions or costs, as defendant urges.