**ONEIDA, LTD. & Subsidiaries, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 97–62T.

United States Court of Federal Claims.

May 6, 1999.

---

Timothy C. Frautschi, Milwaukee, Wisconsin, attorney of record for plaintiff.

Robert J. Higgins, Washington, D.C., with whom was Acting Assistant Attorney General Loretta C. Argrett, for defendant.

## ORDER

ALLEGRA, Judge.

Plaintiff, Oneida, Ltd. & Subsidiaries, filed this tax refund suit on January 30, 1997, seeking a refund of taxes and interest allegedly overpaid for tax years 1988 and 1989. At issue is defendant's motion to compel the production of certain documents that were requested, via subpoena and otherwise, from plaintiff's testifying expert witnesses. Plaintiff claims that the documents are protected from production by the work product doctrine. Defendant argues that the work product doctrine does not apply to the subject documents and even if it did, plaintiff waived the doctrine by failing to raise such objections on a timely basis.

## I. Facts

The facts giving rise to this discovery dispute are as follows: By order dated October 9, 1997, the parties were to complete discovery by March 31, 1998. The court extended this deadline to August 28, 1998, upon motion of defendant. In July 1998, after notifying plaintiff's counsel that it wished to depose plaintiff's witnesses, defendant issued subpoenas duces tecum to a number of plaintiff's witnesses, including three of plaintiff's testifying experts—Carol J. Mitten, Gregory S. Heebink and Alan D. Hand. In August, after scheduling problems were encountered, the parties agreed to schedule nine depositions, including those of the plaintiff's testifying experts, in early September, *i.e.*, after the August 28th discovery deadline.

On August 27, 1998, defendant filed a motion to enlarge the discovery period to November 26, 1998. In its motion, defendant advised that the case had been reassigned and that additional time was necessary for new counsel to become familiar with the case, to reschedule the nine depositions previously scheduled, to obtain and review previously requested documents which had yet to be produced, and to conduct any further discovery deemed necessary. Plaintiff objected to defendant's request for enlargement, arguing it was too open-ended. After a status conference, the court, by order dated October 22, 1998, granted defendant's motion for enlargement of time until November 26, 1998, "to allow defendant's new counsel time to become familiar with the case and to conduct ... limited discovery [including] [d]efendant's taking of the nine previously-scheduled depositions."

Pursuant to the court's order, defendant rescheduled the depositions of plaintiff's five expert witnesses. On October 30, 1998, defendant reissued a subpoena duces tecum to Ms. Mitten, which required her to produce certain documents on November 10, 1998, and to appear for a deposition on November 12, 1998. On November 5, 1998, defendant issued a subpoena duces tecum to expert G. Richard Kelley, which required him to produce certain documents on November 12, 1998, and to appear for a deposition on November 20, 1998. On November 18, 1998, defendant reissued a subpoena duces tecum to Mr. Heebink, which required him to produce certain documents and appear for a deposition on November 23, 1998. Each of these subpoenas was on a form supplied by the court, on the back of which is the full text of RCFC 45(c), which sets forth the time period for making written objections to documents requested by such a subpoena, *i.e.*, "within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service." RCFC 45(c)(2)(b). In lieu of reissuing a subpoena, on November 13, 1998, defendant sent a letter and notice of deposition to Mr. Hand for a November 23, 1998, deposition.[1] The letter included a request for documents to be produced at the deposition and asked that if Mr. Hand "[did] not intend to comply

---

1. As the November 13th letter to Mr. Hand indicates, defendant's counsel did not serve Mr.

Hand, a Canadian citizen, with a subpoena because he was not a resident of the United States.

with [the] document request, please advise as soon as possible." Plaintiff received timely notice of all four expert depositions.[2]

Ms. Mitten produced documents on November 10, 1998, as required by her subpoena. She appeared for the November 12th deposition as scheduled and testified that she sent documents responsive to the subpoena duces tecum to plaintiffs counsel, who then sent them back to her, and then she produced them to defendant. Ms. Mitten further testified at the deposition that she did not know whether plaintiffs counsel had withheld any of the documents that she had sent him. In response, defendant's counsel stated, "I don't know of any grounds for withholding any documents. Therefore, I would ask you to find out if any were withheld, identify them as being withheld, and state the grounds why they were withheld." Plaintiff's counsel, who was present at Ms. Mitten's deposition, made no comments in response to this exchange. Further, at no time prior to the deposition did the witness or plaintiff's counsel object in writing to the request for documents in Ms. Mitten's subpoena duces tecum. Nor did plaintiff's counsel disclose prior to or at the deposition that he had withheld any of the documents sent to him by the expert witness.

Mr. Kelley did not produce documents on November 12, 1998, as required by his subpoena. Rather, Mr. Kelley sent the documents he had gathered to plaintiff's counsel, who then produced the documents on November 17, 1998. Mr. Kelley's deposition took place on November 20th, as scheduled. During the deposition, Mr. Kelley testified that all documents responsive to the subpoena requests had been produced. At no time prior to the deposition did the witness or plaintiff's counsel object in writing to the request for documents in Mr. Kelley's subpoena duces tecum. Nor did plaintiff's counsel disclose prior to or at the deposition that he had withheld any of the documents sent to him by the expert witness.

Mr. Heebink produced documents at his November 23rd deposition as required by his subpoena. Like Ms. Mitten and Mr. Kelley, Mr. Heebink had sent the documents he deemed responsive to the subpoena to plaintiff's counsel, who then returned them to Mr. Heebink. At the deposition, Mr. Heebink testified that plaintiff's counsel had withheld certain documents which Mr. Heebink had provided to him. When asked, Mr. Heebink could not identify which documents had been withheld. Plaintiff's counsel stated that he had withheld documents that were protected by the attorney-client privilege and work product doctrine. At the request of counsel for defendant, plaintiff's counsel agreed to provide a detailed description of the withheld documents. However, at no time prior to the deposition did the witness or plaintiff's counsel object in writing to the request for documents in Mr. Heebink's subpoena duces tecum. Nor did plaintiff's counsel disclose prior to the deposition that he had withheld any of the documents sent to him by the expert witness.

Mr. Hand produced documents at his November 23rd deposition as requested by the November 13th letter from defendant's counsel. At no time prior to the deposition did he or plaintiff's counsel object in writing to the request for documents in the November 13th letter to Mr. Hand. Nor did plaintiff's counsel disclose prior to or at the deposition that he had withheld any of the documents identified by the expert witness.

On December 7, 1998, counsel for defendant sent a letter to counsel for plaintiff requesting a list of any documents withheld from the documents requested from the five testifying expert witnesses. By letter dated December 28, 1998, plaintiff's counsel provided a list describing the documents "withheld from the subpoena duces tecum production of witnesses Heebink, Conroy, Hand, Kelley and Mitten on the basis of a claim of privilege or trial preparation materials." According to this letter, plaintiff's counsel withheld six documents from Ms. Mitten's production, four documents from Mr. Kelley's production, four documents from Mr. Heebink's

---

2. No dispute has arisen over the deposition or document production of plaintiffs fifth expert witness, Mr. Conroy.

production, and five documents from Mr. Hand's production.

In January 1999, the parties exchanged correspondence regarding this budding discovery dispute. During this exchange of letters, plaintiff's counsel released one document withheld from Mr. Heebink's production. In a Joint Status Report dated January 20, 1999, the parties notified the court of the discovery dispute regarding these withheld documents. After no resolution was reached, defendant filed a motion to compel production of documents on February 10, 1999. Following briefing, oral argument was conducted on the motion on April 14, 1999. Defendant argues that plaintiff's counsel waived any valid objection to production of the withheld documents by failing to provide a timely written objection to the document requests as required by RCFC 45(c)(2)(B). Plaintiff responds that no waiver took place and that the subject documents are either protected by the work product doctrine or are not responsive to the document requests.

## II. Discussion

In this case, the parties agreed to proceed with depositions of plaintiff's testifying experts, obviating the need for defendant to file a motion seeking leave to conduct such discovery under RCFC 26(b)(3).[3] In anticipation of these depositions, defendant, in July of 1998, issued subpoenas duces tecum to three of plaintiff's testifying experts—Messrs. Heebink and Hand and Ms. Mitten. The depositions, however, were postponed and on August 27, 1998, defendant filed a motion for an enlargement of time to conduct discovery, including the expert depositions Acting on this motion, the court, on October 22, 1998, authorized defendant to take the depositions of nine individuals, including all the expert witnesses in question.[4] Subse-

quent thereto, defendant reissued subpoenas duces tecum to Mr. Heebink and Ms. Mitten; issued a third such subpoena to Mr. Kelley, another of plaintiff's experts; and, in lieu of reissuing a subpoena, sent a letter requesting documents to Mr. Hand.

In advance of the depositions, Oneida's counsel took steps preventing the witnesses from providing all the documents that were potentially the subject of the subpoenas and the letter request. Defendant now has filed a motion to compel the production of these documents, giving rise to the following questions: (i) did Oneida's counsel waive its objections to providing all or some of the withheld documents; (ii) are some of these documents immune from production under the so-called "work product doctrine;"[5] and (iii) are some of these documents not subject to production as unresponsive to the document requests.

### A. Waiver of Objections under RCFC 45

A person subject to a subpoena to produce and permit inspection and copying of documents may serve a written objection to the subpoena regarding any or all of the requests for production. Rule 45(c)(2)(B) of this court's rules provides, in pertinent part:

> Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises.

Thus, according to Rule 45(c)(2)(B), a written objection must be served on the requesting party's counsel within 14 days of the service of the subpoena, or before the time specified

---

3. Various cases indicate that the parties may proceed with expert discovery by agreement. *See Matthews v. United States,* 756 F.Supp. 511 (D.Kan.1991); *Shackelford v. Vermeer Mfg. Co.,* 93 F.R.D. 512 (W.D.Tex.1982).

4. In its reply in support of its motion, defendant indicated that plaintiff's counsel had not complied with the subpoenas. In its surreply, plaintiff did not object to the issuance of these subpoe-

nas, but rather indicated that the production date thereunder had been canceled when the depositions were canceled.

5. Initially, plaintiff also objected to the production of some of the documents in question based on attorney-client privilege. However, it subsequently opted not to argue that privilege.

in the subpoena for compliance, if that is less than 14 days.

■ In construing the comparable provisions of Rule 45 of the Federal Rules of Civil Procedure, courts have held that the failure to object in writing to a subpoena duces tecum within the time specified ordinarily constitutes a waiver of objections. *In re DG Acquisition Corp.*, 151 F.3d 75 (2d Cir.1998); *Tuite v. Henry*, 98 F.3d 1411, 1416–17 (D.C.Cir.1996); *Wang v. Hsu*, 919 F.2d 130, 131 (10th Cir.1990).[6] This rule applies to the assertion of privileges. *See, e.g., Brogren v. Pohlad*, No. 94 C 6301, 1994 WL 654917 (N.D.Ill. Nov. 14, 1994).[7] In explaining the rationale for these holdings, the Second Circuit stated that "[w]e believe that Rule 45(c)(2)(B) does require the recipient of a subpoena to raise all objections at once, rather than in staggered batches, so that discovery does not become a 'game.' " *In re DG Acquisition Corp.*, 151 F.3d at 81 (*quoting United States v. Bryan*, 339 U.S. 323, 331, 70 S.Ct. 724, 94 L.Ed. 884 (1950)). This rationale makes particular sense where a subpoena is issued in conjunction with an impending deposition. In such circumstances, a timely objection allows production issues to be resolved by the parties or the court in advance of the deposition, avoiding the need for a second deposition should documents withheld later be deemed discoverable. *See Deal v. Lutheran Hospitals & Homes*, 127 F.R.D. at 168 (noting that the failure to object timely can lead to "unnecessary expense and inconvenience to the parties").

■ In the instant case, counsel for Oneida waited until December 28, 1998, to object to the subpoenas duces tecum that were issued to Ms. Mitten and Mr. Kelley on October 30, 1998, and November 5, 1998, respectively. The production dates for these subpoenas were November 10, 1998 and November 12, 1998, respectively, and the depositions of Ms. Mitten and Mr. Kelley were conducted on November 12, 1998, and November 20, 1998, respectively. Counsel for Oneida failed to object to the subpoenas prior to these depositions even though, in advance thereof, he had the experts provide him with the documents they thought were responsive to the subpoenas, reviewed those documents and removed from the stack those he thought were privileged or nonresponsive. By failing to object within the time prescribed by Rule 45(c), plaintiff has waived the objections to the documents its counsel unilaterally withheld as to these witnesses.[8]

6. *See also Creative Gifts, Inc. v. UFO*, 183 F.R.D. 568, 570 (D.N.M.1998); *Barnes Found. v. Township of Lower Merion*, No. CIV.A. 96–372, 1997 WL 169442 (E.D.Pa. Apr. 7, 1997); *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y.1996); *Angell v. Shawmut Bank Connecticut Nat'l Ass'n*, 153 F.R.D. 585, 590 (M.D.N.C.1994); *Deal v. Lutheran Hospitals & Homes*, 127 F.R.D. 166 (D.Alaska 1989); 9 James Wm. Moore et al., *Moore's Federal Practice* 45.04[2] (3d ed. 1999) ("Failure to serve written objections to a subpoena within the time specified by Rule 45 typically constitutes a waiver of the objections.").

7. The 14–day requirement in Rule 45(c)(2)(B) follows the precatory language "[s]ubject to paragraph (d)(2) of this rule." Rule 45(d)(2) provides that "[w]hen information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim." A few courts have relied on this language to conclude that objections based on privilege need not be made within the time period prescribed by Rule 45(c)(2)(B), but rather within a "reasonable period." *See, e.g., Ventre v. Datronic Rental Corp.*, No. 92 C 3289, 1995 WL 42345 (N.D.Ill. Feb. 2, 1995); *Winchester Capital Mgmt. Co. v. Manufacturers Hanover Trust Co.*, 144 F.R.D. 170, 175–76 (D.Mass.1992). The majority of courts, however, have concluded that the language in Rule 45(d)(2) does not absolve a witness from filing a written objection within a maximum of 14 days, but rather requires additional information to be filed within a reasonable period after the timely assertion of a privilege. *See, e.g., In re DG Acquisition Corp.*, 151 F.3d at 81; *Tuite v. Henry*, 98 F.3d at 1416–17. The court finds this latter group of cases the better reasoned.

8. Plaintiff argues that, as a party, the time limitations in Rule 45(c) do not apply to it, but only apply to the testifying witness. However, this contention proves too much. If the rule is construed only to apply to the witnesses, the simple fact is that they did not object on a timely basis here. To allow the plaintiff to raise objections to a subpoena after the time prescribed by the rules short circuits the rationale of the rule, which obviously is designed to resolve disputes regarding production within a short time frame. The

In the case of Mr. Heebink, the subpoena was issued on November 18, 1998. At the deposition on November 23, 1998, counsel for Oneida indicated that he had withheld unidentified documents based on privilege, but he did not object in writing and with any level of specificity until December 28, 1998. Again, in advance of the production date, counsel for Oneida had reviewed the documents and knew that he had specific objections to certain of them, but instead of filing those objections in writing, he simply removed the documents in question from the production, *sub silentio* self-effectuating his objections. Accordingly, by failing to object timely in writing within the time prescribed by Rule 45(c), plaintiff also waived any objections to the production of the documents its counsel unilaterally withheld as to Mr. Heebink. *See Wang v. Hsu*, 919 F.2d at 131 (objecting orally to copying of produced documents at deposition is too late).

█ Plaintiff notes that the failure to serve timely written objections to a subpoena duces tecum may not constitute a waiver of objections if the court finds there are "unusual circumstances" and "good cause" for the failure. Specifically, courts have found that the following circumstances may excuse the failure to serve timely written objections: (i) the subpoena is overbroad on its face and exceeds the bounds of fair discovery; (ii) the subpoenaed witness is a nonparty acting in good faith; or (iii) counsel for the witness and counsel for the subpoenaing party were in contact concerning the witness' compliance before the witness challenged the legal basis for the subpoena. *See Alexander v. FBI*, Nos. Civ. 96–2123 & Civ. 97–1288, 1998 WL 292083 (D.D.C. May 28, 1998); *Concord Boat Corp.*, 169 F.R.D. at 48–51; *Celanese Corp. v. E.I. duPont de Nemours & Co.*, 58 F.R.D. 606, 609 (D.Del.1973).

In this case, counsel for plaintiff has failed to demonstrate any unusual circumstances or good cause for the failure to object timely. Indeed, the situation here is quite to the contrary—counsel for plaintiff had ample opportunity to file objections or to cause the witnesses to file objections and instead simply chose to remove the documents in question from the production without informing defendant's counsel. While counsel for Oneida indicates that he intended to eventually inform defendant's counsel that documents had been withheld, he did not do so until confronted by defendant's counsel. Remarkably, at the depositions, counsel for Oneida sat silently by while Ms. Mitten stated that she did not know whether any document had been withheld and while Mr. Kelley stated that "all documents" had been produced.[9] Thus, far from excusing his failure to object, the conduct of plaintiff's counsel brings to mind the Supreme Court's admonition in *United States v. Bryan*, 339 U.S. at 331, 70 S.Ct. 724, *to wit*, that "[a] subpoena has never been treated as an invitation to a game of hare and hounds, in which the witness must testify only if cornered at the end of a chase."

█ Despite similar conduct by plaintiff's counsel, the result is different in the case of Mr. Hand, the fourth expert deposed by defendant. Defendant did not serve a subpoena duces tecum on Mr. Hand because he is a Canadian citizen who was a resident in Canada. Instead, on November 13, 1998, defendant's counsel sent Mr. Hand a letter requesting documents in which he indicated "[i]f you do not intend to comply with my document request, please advise as soon as possible." Had defendant wished, it could have issued a formal discovery request to Mr. Hand either under the Hague Convention on the Taking of Evidence Abroad, 28 U.S.C. § 1781, or with the cooperation of the Canadian government.[10] It chose not to.

---

court is particularly unwilling to indulge plaintiff's strained interpretation of this rule here given that plaintiff's counsel exercised total control over what was (and was not) produced by the experts in question.

9. Plaintiff argues that comments made by defendant's counsel at the Mitten and Heebink depositions suggested that defendant was willing to waive the time requirements in Rule 45(c). A

review of the deposition transcripts, however, indicates that these comments, as well as defendant's December 7, 1998, letter, were simply designed to determine what documents had been produced.

10. *See generally First American Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 20–22 (2d Cir. 1998) (describing methods for taking discovery abroad).

Having made that choice, defendant may not now analogize its informal document request to a formal subpoena duces tecum so as to bring the request within Rule 45(c) and convert plaintiff's failure to object timely into a waiver of privilege. Accordingly, the court must review the documents that Oneida's counsel withheld as to Mr. Hand to determine whether the work product doctrine precludes their production.

## B. Work Product Doctrine

■ The strong policy against disclosure of an attorney's thought processes was first enunciated by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495, 512, 67 S.Ct. 385, 91 L.Ed. 451 (1947), in which the Court recognized a "general policy against invading the privacy of an attorney's course of preparation." The Hickman rule came to be known as the "work product doctrine" and is codified in RCFC 26(b)(2).[11] This rule "establishes a qualified privilege for materials prepared by counsel in anticipation of litigation and offers special protection to 'opinion work product,' which encompasses documents containing an attorney's mental impressions, ideas and opinions." Christa L. Klopfenstein, *Discoverability of Opinion Work Product Materials Provided to Testifying Experts*, 32 Ind. L.Rev. 481 (1999). At the same time, other provisions of this court's rules provide for liberal discovery practices, including discovery with respect to expert witnesses. *See* RCFC 26(b)(3). The

policies underlying these various rules intersect (some may say collide) where, as here, an attorney shares work product with a testifying expert witness prior to trial. This court's task is to determine when, and to what degree, the work product doctrine must yield to discovery.

■ The courts are in agreement that factual information provided by an attorney to a testifying expert is subject to discovery. *See, e.g., Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, 595 (3d Cir.1984); *Baise v. Alewel's, Inc.*, 99 F.R.D. 95, 97 (W.D.Mo.1983). Similarly, there is ample authority indicating that information and opinions provided by a testifying expert are not protected by the work product doctrine. *See Abruzzo v. United States*, 21 Cl.Ct. 351 (1990).[12] However, a split exists among federal courts as to the discoverability of "opinion" work product, often known as "core work product," provided to a testifying expert.[13] On one side of the spectrum are protection-oriented cases, such as *Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, which have held that work product materials provided to testifying experts are not discoverable.[14] At the polar opposite are discovery-oriented cases, such as *Intermedics, Inc. v. Ventritex, Inc.*, 139 F.R.D. 384 (N.D.Cal. 1991), which have held that "written and oral communications from a lawyer to an expert that are related to matters about which the expert will offer testimony are discoverable, even when those communications otherwise would be deemed opinion work product."

**11.** The comparable provision in the Federal Rules of Civil Procedure is Rule 26(b)(3).

**12.** *See also Natta v. Zletz*, 418 F.2d 633, 638 (7th Cir.1969); *County of Suffolk v. Long Island Lighting Co.*, 122 F.R.D. 120, 122 (E.D.N.Y.1988); *Hewlett–Packard Co. v. Bausch & Lomb, Inc.*, 116 F.R.D. 533, 536 (N.D.Cal.1987); *Beverage Mktg. Corp. v. Ogilvy & Mather Direct Response, Inc.*, 563 F.Supp. 1013, 1014 (S.D.N.Y.1983); *Quadrini v. Sikorsky Aircraft Div., United Aircraft Corp.*, 74 F.R.D. 594, 595 (D.Conn.1977). In this regard, the Advisory Committee Notes accompanying the 1970 amendments to Rule 26 states explicitly that the new provisions of those rules, which are included in the current version of this court's rules, "reject as ill-considered the decisions which have sought to bring expert information within the work-product doctrine." Fed. R.Civ.P. 26 advisory committee notes (1970 amendment).

**13.** Opinion work product includes "the mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning the litigation." *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976 n. 4 (7th Cir.1996) *(quoting Upjohn Co. v. United States*, 449 U.S. 383, 401–02, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)).

**14.** *Magee v. The Paul Revere Life Ins. Co.*, 172 F.R.D. 627, 642 (E.D.N.Y.1997); *All West Supply Co. v. Hill's Pet Prods. Div., Colgate–Palmolive Co.*, 152 F.R.D. 634, 638 (D.Kan.1993); *Dominguez v. Syntex Lab.*, 149 F.R.D. 158, 165 (S.D.Ind.1993); *Hamel v. General Motors Corp.*, 128 F.R.D. 281, 284 (D.Kan.1989); *Bethany Medical Center v. Harder*, No. CIV.A. 85–2415, 1987 WL 47845 (D.Kan. Mar. 12, 1987); *North Carolina Elec. Membership Corp. v. Carolina Power & Light Co.*, 108 F.R.D. 283, 285 (M.D.N.C.1985).

139 F.R.D. at 387.[15] And somewhere in the middle is yet a third line of jurisprudence that holds that work product provided to an expert is discoverable only where the "impeachment value in the particular case would significantly outweigh the chill on development of legitimate work product that would admittedly accompany disclosure." *Bogosian,* 738 F.2d at 598 (Becker, J., dissenting).[16]

■ Having reviewed these precedents, the court is persuaded that core work product information provided to a testifying expert witness should be discoverable, unless such materials bear no probative relationship to the opinion or testimony the expert is likely to give. This construction of RCFC 26(b)(2) arguably proceeds directly from the language of the rule itself, which provides that the protections afforded trial preparation materials are "[s]ubject to the [expert discovery] provisions of subdivision (b)(3)." However, the welter of conflicting decisions construing this language suggests that it is neither clear on this point nor determinative. Nonetheless, several reasons counsel in favor of construing this language to allow considerable discovery of core work product information provided to a testifying expert.

First, the integrity and reliability of the truth finding process in a case should be paramount and must include a full and fair opportunity to cross examine a testifying expert, including possible impeachment of the expert. Opinions or instructions made by an attorney to his expert may include editorial comments on data, recommendations on how to package information for presentation and even suggestions—perhaps strong suggestions—on what conclusions should be drawn and in what terms. Such information, which may reveal the true source of an expert's views, certainly bears on the reliability and probative value of the expert's testimony and, as such, is admissible by way of cross-examination and impeachment. *See* Rules 703, 703 and 705 of the Federal Rules of Evidence. *See also* Fed.R.Evid. 705 advisory committee notes (noting that advance knowledge through pretrial discovery of an expert witnesses' basis for his opinion is essential for effective cross-examination); 8 Charles Alan Wright, Arthur R. Miller & Richard L. Markus, *Federal Practice and Procedure* 2029 n. 16 (2d ed.1994). To pave the way for such questioning, logic and fairness dictate that the same information should also be discoverable.[17]

Second, disclosure of core work product in such circumstances will not cause significant harm to the important principles underlying the work product privilege. Allowing the discovery of core work product information provided to a testifying expert neither interferes with counsel's capacity to reflect in private on the strengths and weaknesses of their client's case, nor prevents counsel from discussing the case with an expert, provided that expert is not called to testify. Indeed, in *Hickman v. Taylor,* 329 U.S. at 511, 67 S.Ct. 385, the Supreme Court indicated that one circumstance in which discovery of core work product documents might be permissible would be "for purposes of impeachment or corroboration." "Were production of written statements and documents to be precluded under such circumstances," the Court noted, "the liberal ideals of the deposition-

---

15. *Karn v. Ingersoll–Rand Co.,* 168 F.R.D. 633, 635 (N.D.Ind.1996); *Furniture World, Inc. v. D.A.V. Thrift Stores, Inc.,* 168 F.R.D. 61, 62 (D.N.M.1996); *Chambers v. Capital Cities/ABC,* 159 F.R.D. 441, 443 (S.D.N.Y.1995); *F.D.I.C. v. Gonzalez–Gorrondona,* No. 91–2791–CIV–HURLEY, 1994 WL 836318 (S.D.Fla. Aug. 11, 1994); *William Penn Life Assurance Co., of America v. Brown Transfer and Storage Co., Inc.,* 141 F.R.D. 142, 143 (W.D.Mo.1990); *Boring v. Keller,* 97 F.R.D. 404, 407 (D.Colo.1983).

16. *Rail Intermodal Specialists, Inc. v. General Elec. Capital Corp.,* 154 F.R.D. 218, 220 (N.D.Iowa 1994); *SiLite, Inc. v. Creative Bath Products, Inc.,* No. 91 C 5920, 1993 WL 384562 (N.D.Ill. Sept. 28, 1993); *Occulto v. Adamar of New Jersey, Inc.,* 125 F.R.D. 611 (D.N.J.1989).

17. *See Intermedics,* 139 F.R.D. at 395 ("Knowing that some or all of the reasoning and opinion that is being presented by an expert is not her own, but is a lawyer's, might well have an appreciable effect on the probative value the trier of fact ascribes to the expert testimony."); *William Penn Life Assurance Co. of America,* 141 F.R.D. at 143 ("Without discovery of such material the adversary is deprived of the opportunity to adequately explore the extent to which counsel's observations affected the expert's opinion, and to impeach the expert on that basis.").

discovery portions of the Federal Rules of Civil Procedure would be stripped of much of their meaning." 329 U.S. at 511–12, 67 S.Ct. 385. *See also Boring v. Keller,* 97 F.R.D. at 408.[18] Indeed, recently, the Supreme Court reiterated that a trial judge has a special obligation to ensure that an expert's opinion has a "reliable basis" in the knowledge and experience of his discipline, something that can be tested only by allowing effective cross-examination into the true basis of that opinion. *Kumho Tire Co., Ltd. v. Carmichael,* — U.S. —, 119 S.Ct. 1167, 143 L.Ed.2d 238 (U.S.Ala.1999).

Finally, adoption of this relatively bright line rule promotes litigation certainty and efficiency. Counsel can easily protect genuine work product by simply not divulging it to the testifying expert. *See Karn v. Ingersoll–Rand Co.,* 168 F.R.D. at 639. If, instead, counsel chooses to use such work product to influence or color the testimony that an expert will give, they do so at the risk that the same information will be discoverable.[19]

In sum, the court is not persuaded that the rule it embraces—that core work product information provided to a testifying expert witness should be discoverable, unless such materials bear no probative relationship to the opinion or testimony the expert is likely to give—poses a serious threat to the principles underlying the work product doctrine. At the same time, this court is convinced that this rule promotes the truth-finding process as it was intended to be promoted by paragraph (3) of Rule 26(b) of the RCFC and by Rules 702, 703 and 705 of the Federal Rules of Evidence.

It remains to apply the rule enunciated above to the documents that were withheld by plaintiff's counsel with respect to Mr. Hand. The court has reviewed these document, which were filed *in camera,* and finds as follows:

1. HA1 is a letter sent by plaintiff's counsel to Mr. Hand dated February 4,1998, requesting a critique of the Rusciano report. The court finds that this letter bears no probative relationship to the opinion or testimony the expert is likely to give and thus need not be produced.

2. HA2 is a letter written by Mr. Hand dated February 16, 1998, to Mr. Tyksinski, an Oneida, Ltd. attorney, discussing Mr. Hand's fee, but also detailing the process to be used in critiquing the Rusciano report. The court finds that this document is responsive to the letter request and should be produced as a document prepared by the testifying expert.

3. HA3 are Mr. Hand's hand-written notes, dated February 1998, regarding the Rusciano critique. The court finds that this document is responsive to the letter request and should be produced as a document prepared by the testifying expert.

4. HA4 is Mr. Hand's critique of the Rusciano report, dated March 26,1998. The court finds that this document is responsive to the letter request and should be produced as a document prepared by the testifying expert.

5. HA5 is a letter from Mr. Hand to Max J. Derbes, dated July 14, 1992, esti-

---

18. The potential harm associated with producing work product material supplied to a testifying expert is not unlike that associated with producing the drafts of an expert's report. Such drafts, particularly when viewed in sequence and compared to a final product, obviously reveal the impact of consultations between a lawyer and expert and, as such, are at least in part attorney work product. Yet, such drafts are readily discoverable. *See Abruzzo,* 21 Cl.Ct. at 357 (citing cases).

19. It bears noting that in 1993, amendments to the Federal Rules of Civil Procedure were adopted that codified some of the pre–1993 decisions allowing for the discovery of work product

material provided to testifying experts. *See* Fed. R.Civ.P. 26(a)(2) & (b)(4). In characterizing these amendments, the Advisory Committee Notes state that "litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions— whether or not ultimately relied upon by the expert—are privileged or otherwise protected from disclosure when such persons are testifying or being deposed." Fed.R.Civ.P. 26 advisory committee notes (1993 amendments). Although this court has not formally adopted these 1993 amendments, the position taken in them provides further indication that the result reached here is sound.

mating a fee to perform a reproduction cost estimate, but also setting forth the process to be used in preparing that estimate. The court finds that this document is responsive to the letter request and should be produced as a document prepared by the testifying expert.

## CONCLUSION

Based on the foregoing,[20] the court GRANTS, in part, defendant's Motion to Compel Production. Specifically, the court concludes that with the exception of document H1, all the other documents in question shall be produced to defendant by no later than May 14, 1999.

Returned herewith to the plaintiff are the documents that were filed *in camera*.

IT IS SO ORDERED.

---

**20.** The court notes that its ruling on the work product doctrine provides an alternate basis for the production of the documents on which plaintiff waived its objections, including, in particular, three documents (HE1, HE2 and HE3) prepared by plaintiff's attorneys and other representatives, and provided to Mr. Heebink.